UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ABDULRAHMAN CHERRI**, | ) | |
| **WISSAM CHARAFEDDINE**, | ) | |
| **ALI SULEIMAN ALI**, and, | ) | |
| **KHEIREDDINE BOUZID**, | ) | **Case No.** |
| | ) | **Hon.** |
| Plaintiffs, | ) | **Magistrate:** |
| | ) | |
| v. | ) | |
| | ) | |
| **ROBERT S. MUELLER, III**, in his official | ) | |
| capacity as Director of the Federal Bureau | ) | |
| of Investigation; | ) | |
| | ) | |
| **MICHAEL J. FISHER**, in his official capacity | ) | |
| as Chief of the United States Border Patrol; | ) | |
| | ) | |
| **JOHN S. PISTOLE**, in his official capacity as | ) | |
| Administrator of the Transportation Security | ) | |
| Administration; | ) | |
| | ) | |
| **ROBERT B.  THOMPSON**, in his individual | ) | |
| capacity; | ) | |
| | ) | |
| **JEFF  SOKOLOWSKI**, in his individual | ) | |
| capacity; | ) | |
| | ) | |
| **UNIDENTIFIED FBI AGENTS**, in their | ) | |
| individual capacities; | ) | |
| | ) | |
| **UNIDENTIFIED CBP AGENTS**, in their | ) | |
| individual capacities; and, | ) | |
| | ) | |
| **UNIDENTIFIED TSA AGENTS**, in their | ) | |
| individual capacities; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT
## AND JURY DEMAND

Plaintiffs, ABDULRAHMAN CHERRI, WISSAM CHARAFEDDINE, ALI SULEIMAN ALI, and KHEIREDDINE BOUZID, through undersigned counsel, state as follows:

## Parties

1.  Plaintiff Abdulrahman Cherri is a United States Citizen and a Muslim residing in Wayne County, Michigan, within this district.

2.  Plaintiff Wissam Charafeddine is a United States Citizen and a Muslim residing in Wayne County, Michigan, within this district.

3.  Plaintiff Ali Suleiman Ali is a United States Citizen and a Muslim residing Wayne County, Michigan, within this district.

4.  Plaintiff Kheireddine Bouzid is a United States Citizen and a Muslim of residing in Washtenaw County, Michigan, within this district.

5.  Defendant Robert S. Mueller is Director of the Federal Bureau of Investigation ("FBI"). Defendant Mueller is being sued in his official capacity, only.

6.  Defendant Robert B. Thompson is an agent employed by the FBI and is being sued in his individual capacity.

7.  Defendant Jeff Sokolowski is an agent employed by the FBI and is being sued in his individual capacity.

8.  Defendant Michael J. Fisher is Chief of the United States Border Patrol ("CBP"). Defendant Fisher is being sued in his official capacity, only.

9.  Defendant John S. Pistole is Administrator of the Transportation Security Administration ("TSA"). Defendant Pistole is being sued in his official capacity, only.

10.     Defendants Unidentified FBI Agents, Unidentified CBP Agents, and Unidentified TSA Agents are employed by their respective agencies and are being sued in their individual capacities.

## Jurisdiction and Venue

11.     Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*, and federal common law.

12.     This action also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure, and pursuant to the general, legal, and equitable powers of this Court.

13.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

14.     Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are officers of agencies of the United States sued in their official capacity and because this judicial district is where all Plaintiffs reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## Factual Background

### Abdulrahman Cherri

15.     On or about March, 2010, Plaintiff Abdulrahman Cherri ("Cherri") crossed the United States-Canada border for the purposes of reentering the United States.

16.     On or about that day, Cherri was subjected to an invasive body search, a prolonged detention lasting several hours, and prolonged questioning about his religion and religious practices.

17.     After that day in March, 2010, Cherri crossed the United States-Canada border more than six times, and each time he crossed, Cherri was repeatedly subjected to invasive body searches, fingerprinted, detained for several hours, and questioned regarding his religion and religious practices.

18.     During all detentions at the United States-Canada border, one or more Defendants asked Cherri substantially similar questions regarding his place of worship, the locations at which he worships, and how frequently he attends his primary place of worship.

19.     Cherri was subjected to substantially similar treatment and questioning by one or more Defendants every time he crossed the United States-Canada border since March, 2010.

20.     On or about May, 2011, Cherri was also asked substantially similar questions pertaining to his religion and religious practices by two FBI Agents, Defendants Agent Robert B. Thompson and Agent Jeff Sokolowski, at his home.

21.     Cherri continues to be subjected to the same prolonged detentions and religious questioning each time he crosses the United States-Canada border.

22.     As of the date of this filing, Cherri has not been provided with a reason for being subjected to the above treatment.

### Wissam Charafeddine

23.     On or about November, 2008, Plaintiff Wissam Charafeddine ("Charafeddine") crossed the United States-Canada border for the purposes of reentering the United States.

24.    On that day, Charafeddine's vehicle was surrounded by armed CBP Agents, and Charafeddine was handcuffed, subjected to an invasive body search, a prolonged detention lasting several hours, and prolonged questioning about his religion and religious practices.

25.    After that day in November, 2008, Charafeddine crossed the United States-Canada border more than six times, including as recent as December, 2010.

26.    Each time Charafeddine crossed the United States-Canada border, his vehicle was surrounded by armed CBP Agents, and he was handcuffed, subjected to an invasive body search, fingerprinted, and detained for several hours.

27.    During all six detentions at the United States-Canada border, Charafeddine was questioned by one or more Defendants about his religion and religious practices.

28.    Charafeddine continues to be subjected to the same prolonged detentions and religious questioning each time he crosses the United States-Canada border.

29.    As of the date of this filing, Charafeddine has not been provided with a reason for being subjected to the above treatment.

**Ali Suleiman Ali**

30.    Plaintiff Ali Suleiman Ali ("Ali") crossed the United States-Canada border and multiple United States international air ports of entry for the purposes of reentering the United States.

31.    At both the United States-Canada border and multiple United States international air ports of entry, Ali was handcuffed, subjected to prolonged detentions lasting several hours, and subjected to prolonged questioning by one or more Defendants about his religious philosophy and religious views, religious practices, and the locations at which he worships.

5

32.     Ali continues to be subjected to the same prolonged detentions and prolonged religious questioning when he crosses the United States-Canada border and United States international ports of entry, including as recent as December, 2011.

33.     As of the date of this filing, Ali has not been provided with a reason for being subjected to the above treatment.

### Kheireddine Bouzid

34.     On or about August 24, 2008, Plaintiff Kheireddine Bouzid ("Bouzid") crossed the United States-Canada border for the purposes of reentering the United States.

35.     On that day on or about August 24, 2008, Bouzid's vehicle was surrounded by armed CBP Agents with their guns drawn, and Bouzid was handcuffed, subjected to an invasive body search, a prolonged detention lasting several hours, and prolonged questioning about his religion and religious practices.

36.     After that day on or about August 24, 2008, Bouzid crossed the United States-Canada border more than four times, including as recent as July, 2010,  and each time he crossed the United States-Canada border, Bouzid's vehicle was surrounded by armed CBP Agents with their guns drawn, and Bouzid was handcuffed, subjected to an invasive body search, fingerprinted, detained for several hours, and questioned about his religion and religious practices.

37.     During all detentions at the United States-Canada border, one or more Defendants questioned Bouzid regarding his place of worship, whether he prays five times a day, which Islamic sect he follows, and whether he prays his early morning prayer at his primary place of worship.

6

38.     During at least one detention at the United States-Canada Border, Bouzid was held in what he describes as a storage room and handcuffed to a stool.

39.     During at least one detention at the United States-Canada Border, Bouzid was held in what he describes as a jail cell.

40.     Bouzid continues to be subjected to the same prolonged detentions and religious questioning each time he crosses the United States-Canada border.

41.     As of the date of this filing, Bouzid has not been provided with a reason for being subjected to the above treatment.

**Defendants' Questioning of Religious Practices**

42.     CBP and TSA Agents are responsible for screening travelers who present themselves at ports of entry in order to enter the United States.

43.     CBP and TSA Agents sometimes pull travelers aside and subject them to additional questioning, searches of their persons, or searches of their property and vehicles before allowing them to enter the United States.

44.     Upon information and belief, Defendants began implementing a policy or a course of conduct under which Defendants ask Muslim American travelers attempting to re-enter the United States through the United States-Canada border at multiple international ports of entry a detailed list of questions about their religious beliefs and religious practices.

45.     Upon information and belief, citizens of other faiths are not questioned about their religious beliefs and religious practices.

46.     Defendants' course of conduct or policy includes asking Muslim American travelers, at minimum, a fixed set of questions about their Islamic religious practices, which include, but are not limited to the following:

    a.      Which mosque do you go to?

    b.      How many times a day do you pray?

    c.      Who is your religious leader?

    d.      Do you perform your morning prayer at the mosque?

47.    The questioning and treatment described above humiliates Muslim American travelers, such as Plaintiffs, and wrongfully stigmatizes them as violent threats based solely on a subjective assessment of their religious beliefs.

48.    On March 24, 2011, the Council on American-Islamic Relations, Michigan ("CAIR-MI") filed a complaint with the Office of Civil Rights and Civil Liberties, DHS, on behalf of the Plaintiffs and other Muslim Americans that reported similar treatment and questioning related to their religion and religious practices.

49.    In a letter dated May 3, 2011 written in response to the complaint filed on March 24, 2011, Ms. Margo Schlanger, Officer for Civil Rights and Civil Liberties, DHS, stated that "Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, our complaint process does not provide individuals with legal or procedural rights or remedies. Accordingly, this Office is not able to obtain any legal remedies or damages on your behalf or that of the above complainants."

50.    The policy described above does not further any legitimate border patrol purpose or compelling government interest.

## COUNT I
### VIOLATION OF THE FIRST AMENDMENT
### TO THE UNITED STATES CONSTITUTION

51.    Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

8

52.     In choosing to exercise their religion, Plaintiffs are engaging in a constitutionally protected activity.

53.     The action of targeting and detaining Plaintiffs with a purpose of questioning them about their religious beliefs and practices violates the First Amendment rights of Plaintiffs as guaranteed by the United States Constitution.

54.     The detailed and invasive questioning of Plaintiffs about their religious practices and the Defendants' explicit policy that mandates the above-described treatment constitute an adverse action against Plaintiffs.

55.     The explicit policy of targeting Plaintiffs and questioning them regarding their religious beliefs would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion. Prolonged detentions and interrogations based on Plaintiffs' religious practices constitute harassment and retaliation that have caused psychological harm to Plaintiffs.

56.     Gathering information about Plaintiffs' religious practices and beliefs does not serve a legitimate or valid law enforcement purpose or a compelling state interest.

57.     Defendants' motive in targeting Plaintiffs for a specific line of religious questioning at the border is both discriminatory and retaliatory.

Wherefore, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
## VIOLATION OF THE FIFTH AMENDMENT
## TO THE UNITED STATES CONSTITUTION

58.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

59.     All Plaintiffs have been subjected to a strikingly similar, if not identical, line of questioning about their religious beliefs and religious practices as Muslim Americans by Defendants at the United States-Canada border and other international ports of entry.

60.     The decision to target Plaintiffs for a specific line of religious questioning based solely on their religious beliefs and religious practices violates the Equal Protection rights of Plaintiffs guaranteed by the Fifth Amendment to the United States Constitution, in that persons of other faiths similarly situated as Plaintiffs are not asked similar questions about their religion and religious practices.

61.     Questioning Plaintiffs about their religion and religious practices does not serve a compelling state interest.

Wherefore, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

<u>COUNT III</u>
**VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT**
**(42 U.S.C. § 2000bb, *et seq.*)**

62.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

63.     Defendants' actions of targeting and detaining Plaintiffs with a purpose of questioning them about their religious beliefs and practices substantially burden Plaintiffs' religious exercise of Islam.

64.     Defendants' actions are not in furtherance of a compelling government interest.

65.     Even assuming the Defendants' actions furthered a compelling government interest, targeting and detaining Plaintiffs with the purpose of questioning them about their religious beliefs and religious practices is not the least restrictive means of furthering any such interest.

66.     As a direct and proximate cause of Defendants' actions, Plaintiffs have been harmed.

67.     Plaintiffs' harm includes, but is not limited to, a chilling effect on Plaintiffs' and other Muslim Americans' right to free exercise of religion and free speech, and they are entitled to all legal and equitable remedies under the Religious Freedom Restoration Act (the "Act").

68.     Defendants' unlawful actions caused Plaintiffs harm and they are entitled to injunctive relief, and compensatory damages against the individual Defendants, and all such other relief this Court deems just and proper in addition to costs and attorneys' fees, as provided under the Act.

Wherefore, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about

their religious beliefs and religious practices, compensatory damages against the individual Defendants, plus all such other relief this Court deems just and proper, in addition to costs and attorneys' fees as provided for under the Act.

WHEREFORE, Plaintiffs respectfully request:

1.  A declaratory judgment that Defendants' policies, practices, and customs violate the First and Fifth Amendments to the United States Constitution, and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*.;

2.  An injunction that:

    a.  bars Defendants from engaging in further unconstitutional practices by questioning Plaintiffs about their religious beliefs and religious practices, and,

    b.  requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, eliminating any existing policy whereby Plaintiffs, other Muslim Americans, and others similarly situated are subject to religious questioning at ports of entry;

3.  An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2412; and,

4.  Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of action.

Respectfully submitted,

AKEEL & VALENTINE, PLLC

  _/s/ Shereef Akeel_____
  SHEREEF H. AKEEL (P54345)
  SYED H. AKBAR (P67967)
  Attorneys for Plaintiffs
  888 W. Big Beaver Rd., Ste. 910
  Troy, MI 48084
  Phone: (248) 269-9595
  shereef@akeelvalentine.com

AKEEL & VALENTINE, PLLC

  _/s/ Syed Akbar_____

  Attorney for Plaintiffs
  888 W. Big Beaver Rd., Ste. 910
  Troy, MI 48084
  Phone: (248) 269-9595
  hakbar@akeelvalentine.com

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS

  _/s/ Gadeir Abbas_____
  GADEIR I. ABBAS (VA #: 81161)
  Attorney for Plaintiffs
  453 New Jersey Avenue, SE
  Washington, DC 20003
  Phone:  (202) 742-6410
  gabbas@cair.com

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, MICHIGAN

  _/s/ Lena Masri_____
  LENA F. MASRI (P73461)
  Attorney for Plaintiffs
  21700 Northwestern Hwy, Ste. 815
  Southfield, MI 48075
  Phone:  (248) 559-2247
  lmasri@cair.com

13

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, OHIO

*/s/ Jennifer Nimer*_____
JENNIFER NIMER (OH#: 0079475)
Attorney for Plaintiffs
1505 Bethel Road, Ste. 200
Columbus, OH 43220
Phone:  (614) 783-7953
jnimer@cair.com

Dated:  April 13, 2012