**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ABDULRAHMAN CHERRI**, | ) | |
| **WISSAM CHARAFEDDINE**, | ) | |
| **ALI SULEIMAN ALI**, and, | ) | |
| **KHEIREDDINE BOUZID**, | ) | **Case No. 12-cv-11656** |
| | ) | **Hon. Avern Cohn** |
| Plaintiffs, | ) | **Magistrate: Laurie J. Michaelson** |
| | ) | |
| v. | ) | |
| | ) | |
| **ROBERT S. MUELLER, III**, in his official | ) | |
| capacity as Director of the Federal Bureau | ) | |
| of Investigation; | ) | |
| | ) | |
| **DAVID V. AGUILAR**, in his official capacity | ) | |
| as Acting Commissioner of the United States | ) | |
| Customs and Border Protection; | ) | |
| | ) | |
| **JANET NAPOLITANO**, in her official capacity | ) | |
| as Secretary of the United States Department | ) | |
| of Homeland Security; | ) | |
| | ) | |
| **ROBERT B. THOMPSON**, in his individual | ) | |
| capacity; | ) | |
| | ) | |
| **JEFF SOKOLOWSKI**, in his individual | ) | |
| capacity; | ) | |
| | ) | |
| **UNIDENTIFIED FBI AGENTS**, in their | ) | |
| individual capacities; | ) | |
| | ) | |
| **UNIDENTIFIED CBP AGENTS**, in their | ) | |
| individual capacities; and, | ) | |
| | ) | |
| Defendants. | ) | |

_____/

**AMENDED COMPLAINT**
**AND JURY DEMAND**

Plaintiffs, ABDULRAHMAN CHERRI, WISSAM CHARAFEDDINE, ALI SULEIMAN ALI, and KHEIREDDINE BOUZID, through their undersigned counsel, state as follows:

**Parties**

1.      Plaintiff Abdulrahman Cherri is a United States Citizen and a Muslim residing in Wayne County, Michigan, within this district.

2.      Plaintiff Wissam Charafeddine is a United States Citizen and a Muslim residing in Wayne County, Michigan, within this district.

3.      Plaintiff Ali Suleiman Ali is a United States Citizen and a Muslim residing Wayne County, Michigan, within this district.

4.      Plaintiff Kheireddine Bouzid is a United States Citizen and a Muslim of residing in Washtenaw County, Michigan, within this district.

5.      Defendant Robert S. Mueller is Director of the Federal Bureau of Investigation ("FBI").  Defendant Mueller is being sued in his official capacity, only.

6.      Defendant David V. Aguilar is Deputy Commissioner and Acting Commissioner of the United States Customs and Border Protection ("CBP").  Defendant Aguilar is being sued in his official capacity, only.

7.      Defendant Janet Napolitano is Secretary of the United States Department of Homeland Security ("DHS").  Defendant Napolitano is being sued in her official capacity, only.

8.      Defendant Robert B. Thompson is an agent employed by the FBI and is being sued in his individual capacity, only.

9.      Defendant Jeff Sokolowski is an agent employed by the FBI and is being sued in his individual capacity, only.

10.     Defendants Unidentified FBI Agents and Unidentified CBP Agents are employed by their respective agencies and are being sued in their individual capacities, only.

## Jurisdiction and Venue

11.     Under U.S. Const. Art. III §2, this Court has jurisdiction because the rights sought to be protected herein are secured by the United States Constitution.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.*, and federal common law.

12.     This action also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02, Rules 57 and 65 of the Federal Rules of Civil Procedure, and pursuant to the general, legal, and equitable powers of this Court.

13.     A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

14.     Venue is proper under 42 U.S.C. § 1391(e) as to all Defendants because Defendants are officers or employees of agencies of the United States sued in their official capacity or under color of legal authority and because this judicial district is where all Plaintiffs reside and where a substantial part of the events or omissions giving rise to the claims occurred.

## Factual Background

### Abdulrahman Cherri

15.     On or about March, 2010, Plaintiff Abdulrahman Cherri ("Cherri") crossed the United States-Canada border for the purposes of reentering the United States.

3

16.     On or about that same day, Unidentified CBP Agents subjected Cherri to an invasive body search and a prolonged detention lasting several hours whereby he was subjected to prolonged questioning about his Islamic beliefs and practices.

17.     After that day in March, 2010, Cherri crossed the United States-Canada border more than six times, and each time he crossed, Unidentified CBP Agents repeatedly subjected Cherri to invasive body searches, fingerprinted, detained for several hours, and invasive questioning regarding his Islamic beliefs and practices.

18.     During all detentions at the United States-Canada border, Unidentified CBP Agents and/or Unidentified FBI Agents asked Cherri substantially similar questions regarding his place of worship, the locations at which he worships, and how frequently he attends his primary place of worship.

19.     Cherri was subjected to substantially similar treatment and questioning by one or more Unidentified CBP Agents and/or Unidentified FBI Agents every time he crossed the United States-Canada border since March, 2010.

20.     On or about May, 2011, two FBI Agents, Defendants Thompson and Sokolowski, questioned Cherri at his home.  Defendants Thompson and Sokolowski advised Cherri that they were aware Cherri was being subjected to repeated detentions and religious questioning at the United States – Canada border.

21.     Defendants Thompson and Sokolowski advised Cherri that if he answers certain questions, they would try to find out the reasons why Cherri was being repeatedly detained and questioned at the border and correct the problem so that he no longer detained and questioned at the border.

22.     Defendants Thompson and Sokolowski asked Cherri substantially similar questions as those asked by Unidentified CBP Agents and/or Unidentified FBI Agents during his detentions at the United States – Canada border, including, but not limited to, his Islamic beliefs and practices, his primary place of worship, the locations at which he worships, how frequently he attends his primary place of worship, and which sect of Islam he follows.

23.     Cherri continues to be subjected to the same prolonged detentions and religious questioning by Unidentified CBP Agents and/or Unidentified FBI Agents each time he crosses the United States-Canada border.

24.     As of the date of this filing, Defendant Thompson, Defendant Sokolowski, Unidentified CBP Agents and/or Unidentified FBI Agents have not provided Cherri with a reason for being subjected to the above treatment.

25.     Cherri no longer crosses the United States – Canada border in order to avoid being subjected to the above treatment.

### Wissam Charafeddine

26.     On or about November, 2008, Plaintiff Wissam Charafeddine ("Charafeddine") crossed the United States-Canada border for the purposes of reentering the United States.

27.     On that day, Charafeddine's vehicle was surrounded by armed Unidentified CBP Agents.  The Unidentified CBP Agents handcuffed Charafeddine, subjected him to an invasive body search, and a prolonged detention lasting several hours whereby he was subjected to invasive questioning about his Islamic beliefs and practices.

28.     After that day in November, 2008, Charafeddine crossed the United States-Canada border more than six times, including as recent as December, 2010.

29.     Each time Charafeddine crossed the United States-Canada border, his vehicle was surrounded by armed Unidentified CBP Agents.  The Unidentified CBP Agents handcuffed him, subjected him to an invasive body search, fingerprinted him, and detained him for several hours.

30.     During all six detentions at the United States-Canada border, Charafeddine was questioned by one or more Unidentified CBP Agents and/or Unidentified FBI Agents about his Islamic beliefs and practices.

31.     Charafeddine continues to be subjected to the same prolonged detentions and religious questioning by Unidentified CBP Agents and/or Unidentified FBI Agents each time he crosses the United States – Canada border.

32.     Due to Charafeddine's repeated detentions and religious questioning, Charafeddine has suffered loss of business interests and income in Canada.

33.     As of the date of this filing, the Unidentified CBP Agents and/or Unidentified FBI Agents have not provided Charafeddine with a reason for being subjected to the above treatment.

34.     Charafeddine no longer crosses the United States – Canada border in order to avoid being subjected to the above treatment.

**Ali Suleiman Ali**

35.     Plaintiff Ali Suleiman Ali ("Ali") crossed the United States-Canada border and multiple United States international air ports of entry for the purposes of reentering the United States.

36.     At both the United States-Canada border and multiple United States international air ports of entry, Unidentified CBP Agents handcuffed Ali, subjected him to prolonged detentions lasting several hours, and subjected him to prolonged invasive questioning by one or more Unidentified CBP Agents and/or Unidentified FBI Agents about his Islamic religious philosophy and Islamic views, Islamic practices, and the locations at which he worships.

6

37.     Ali continues to be subjected to the same prolonged detentions and prolonged religious questioning by Unidentified CBP Agents and/or Unidentified FBI Agents when he crosses the United States-Canada border and United States international ports of entry, including as recent as December, 2011.

38.     As of the date of this filing, the Unidentified CBP Agents and/or Unidentified FBI Agents have not provided Ali with a reason for being subjected to the above treatment.

### Kheireddine Bouzid

39.     On or about August 24, 2008, Plaintiff Kheireddine Bouzid ("Bouzid") crossed the United States-Canada border for the purposes of reentering the United States.

40.     On that day on or about August 24, 2008, Bouzid's vehicle was surrounded by armed Unidentified CBP Agents with their guns drawn.  The Unidentified CBP Agents handcuffed Bouzid, subjected him to an invasive body search, and a prolonged detention lasting several hours.  The Unidentified CBP Agents and/or Unidentified FBI Agents subjected Bouzid to invasive questioning about his Islamic beliefs and practices.

41.     After that day on or about August 24, 2008, Bouzid crossed the United States-Canada border more than four times, including as recent as July, 2010,  and each time he crossed the United States-Canada border, Unidentified CBP Agents surrounded Bouzid's vehicle with their guns drawn, and handcuffed him, subjected him to an invasive body search, fingerprinted him, detained him for several hours, and questioned him about his Islamic beliefs and practices.

42.     During all detentions at the United States-Canada border, one or more Unidentified CBP Agents and/or Unidentified FBI Agents questioned Bouzid regarding his place of worship, whether he prays five times a day, which Islamic sect he follows, and whether he prays his early morning prayer at his primary place of worship.

43.     Unidentified CBP Agents continue to subject Bouzid to the same prolonged detentions and religious questioning each time he crosses the United States-Canada border.

44.     As of the date of this filing, the Unidentified CBP Agents and/or Unidentified FBI Agents have not provided Bouzid with a reason for being subjected to the above treatment.

45.     Bouzid no longer crosses the United States – Canada border in order to avoid being subjected to the above treatment.

**Defendants' Questioning of Religious Practices**

46.     CBP Agents are responsible for screening travelers who present themselves at ports of entry in order to enter the United States.

47.     CBP Agents sometimes pull travelers aside and subject them to additional questioning, searches of their persons, or searches of their property and vehicles before allowing them to enter the United States.

48.     FBI Agents sometimes subject travelers to additional questioning at ports of entry before allowing them to enter the United States.

49.     Upon information and belief, whether due to a policy implemented by Defendant Aguilar and Napolitano's respective agencies, or due to a course of conduct or pattern of practice that was permitted, encouraged, or tolerated by Defendant Aguilar and Napolitano's respective agencies, CBP Agents refer Muslim American travelers more frequently than American travelers of other faiths for secondary inspection.

50.     Upon information and belief, Defendants Mueller, Aguilar, and Napolitano, through their respective agencies, either began implementing a policy or encouraged, permitted, or tolerated a course of conduct or pattern of practice under which CBP Agents and FBI Agents ask Muslim American travelers attempting to re-enter the United States through the United

States-Canada border and at multiple international ports of entry detailed questions about their specific Islamic beliefs and practices.

51.     Upon information and belief, Defendants Mueller, Aguilar, and Napolitano, through their respective agencies, have not implemented a policy or encouraged, permitted, or tolerated a course of conduct or pattern of practice whereby CBP Agents and FBI Agents ask American travelers of other faiths questions about their specific religious beliefs and religious practices.

52.     Defendants Mueller, Aguilar, and Napolitano, through their respective agencies, were aware of and implemented a policy or encouraged, permitted, or tolerated a course of conduct or pattern of practice by CBP Agents and FBI Agents, which includes asking Muslim American travelers a substantially similar set of questions about their Islamic beliefs and practices, that typically include, but are not limited to the following:

        a.     Which mosque do you go to?

        b.     How many times a day do you pray?

        c.     Who is your religious leader?

        d.     Do you perform your morning prayer at the mosque?

53.     The questioning and treatment described above targets, discriminates against, humiliates, substantially burdens, and creates a chilling effect upon Muslim American travelers, including Plaintiffs, and wrongfully stigmatizes them as violent threats based solely on a subjective assessment of their Islamic beliefs and practices.

54.     On October 1, 2010, a Senior Advisor for the Office of Civil Rights and Civil Liberties, DHS, wrote a Legal Memorandum to Ms. Margo Schlanger, Officer for Civil Rights and Civil Liberties, DHS ("DHS CRCL") that examined a policy of religious questioning and

religious profiling by law enforcement both at the border and within the United States (the "Legal Memorandum"). The Legal Memorandum is referenced as an Exhibit to this Complaint.

55.     Both prior to and subsequent to the date of the Legal Memorandum, Defendant Napolitano and Defendant Aguilar's respective agencies received and/or were made aware of a number of complaints from similarly situated Muslim American travelers throughout the United States that, similar to Plaintiffs, were subjected to detailed questions about their Islamic beliefs and practices by CBP and/or FBI Agents while attempting to re-enter the United States through the United States-Canada border or at multiple international ports of entry.

56.     On March 24, 2011, the Council on American-Islamic Relations, Michigan ("CAIR-MI") filed a complaint with DHS CRCL on behalf of the Plaintiffs and several other similarly situated Muslim Americans that reported similar treatment and questioning related to their Islamic beliefs and practices by CBP and/or FBI Agents.

57.     In a letter dated May 3, 2011 written in response to the complaint filed on March 24, 2011, Ms. Schlanger, Officer for DHS CRCL, stated that "Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, our complaint process does not provide individuals with legal or procedural rights or remedies.  Accordingly, this Office is not able to obtain any legal remedies or damages on your behalf or that of the above complainants" (the "DHS CRCL Letter").  The DHS CRCL Letter is referenced as an Exhibit to this Complaint.

58.     In the DHS CRCL Letter, Ms. Schlanger further stated that she was aware of other Muslim American travelers similarly situated that were subjected to substantially similar invasive questioning about their religious beliefs and practices by CBP Agents at ports of entry: "[DHS] CRCL has received a number of complaints like yours, alleging that U.S. Customs and

Border Protection (CBP) officers have engaged in inappropriate questioning about religious affiliation and practices during border screening."

59.    On May 3, 2011, pursuant to a Memorandum addressed to former CBP Commissioner Alan Bersin from Ms. Schlanger, Defendant Napolitano and Defendant Aguilar's respective agencies were aware of at least twenty-two other Muslim American travelers throughout the United States that filed similar complaints regarding invasive religious questioning by both CBP and FBI Agents about their Islamic beliefs and practices with DHS (the "CBP Memorandum").  The CBP Memorandum is referenced as an Exhibit to this Complaint.

60.    The CBP Memorandum stated that FBI and CBP Agents were "repeatedly question[ing] [Muslim travelers] and other members of their communities about their religious practices or other First Amendment protected activities, in violation of their civil rights or civil liberties."

61.    The CBP Memorandum included the following examples of Muslim travelers similarly situated to Plaintiffs that were subjected to similar invasive questioning about their Islamic beliefs and practices by FBI and CBP Agents at ports of entry:  (1) On November 17, 2009, CBP Agents asked a Muslim traveler at Logan International Airport in Boston, Massachusetts "how often he prays and what mosque he attends;" (2)  In August 2009, CBP Agents asked a Muslim traveler "what mosque he attends and how often he prays;" (3) On February 21, 2010, CBP Agents asked a Muslim traveler "When did you convert? When did you become a Muslim? Which mosques do you attend? and "How often do you attend the mosque?" (4) On August 6, 2009, in Champlain, New York, CBP Agents asked a Muslim traveler "Do you go the mosque? Why? How often? What Mosque?  Are you an Imam at the mosque? And "Are you Shi'a or Sunni?" (5) In January, 2010, in Buffalo, New York, CBP Agents asked a Muslim

traveler "Are you a Muslim? and "Do you pray five times a day, in the mosque?" (6) On July 8,

2010, in Seattle, Washington, an FBI Agent asked a Muslim traveler at the United States –

Canada border "What mosque do you attend? How often do you attend the mosque? So you

don't consider yourself a religious person?" (7) In Port Huron, Michigan, an FBI agent asked a

Muslim traveler crossing the border "about his place of worship and how many times he attended

per week" (8) In Atlanta, Georgia, a Muslim traveler was asked by CBP Agents "about protected

beliefs, practices and associations," and, (9) On February 26, 2010, a Muslim traveler was asked

by a CBP Agent "whether he was Sunni or Shi'ite," and was told that he should expect to face

similar questioning again.

62.     The policies, course of conduct, or pattern of practice, described above, of

Defendant Mueller, Aguilar, and Napolitano's respective agencies, do not further any valid or

legitimate law enforcement purpose, or other public purpose, nor do they further any compelling

government interest.

### COUNT I
### VIOLATION OF THE FIRST AMENDMENT
### TO THE UNITED STATES CONSTITUTION
### (Free Exercise of Religion)

63.     Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs

of this Complaint as if fully set forth herein.

64.     In choosing to exercise their religion, Plaintiffs are engaging in a constitutionally

protected activity.

65.     Defendants' actions described above directly infringe upon or substantially

burden Plaintiff's First Amendment rights to free exercise of religion as guaranteed by the

United States Constitution because Defendants have continued to repeatedly discriminate

against, target, and detain Plaintiffs for the purpose of questioning Plaintiffs invasive questions about their religious beliefs and practices.

66.    Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the above-described treatment of Plaintiffs, constitute a substantial burden on Plaintiffs' First Amendment rights to free exercise of religion, an adverse action against Plaintiffs motivated by Plaintiffs' religious beliefs and practices, and an action that targets religious conduct for distinctive treatment.

67.    Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate repeatedly discriminating against and targeting Plaintiffs and subjecting them to invasive questioning regarding their religious beliefs would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion. Repeated prolonged detentions and invasive interrogations based on Plaintiffs' religious practices constitute harassment and retaliation that have caused psychological harm to Plaintiffs.

68.    Repeatedly detaining Plaintiffs for the purpose of gathering information about their religious practices and beliefs does not serve a legitimate, public or valid law enforcement purpose or a compelling state interest.

69.    Even assuming the Defendants' actions does further a compelling government interest, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and religious practices is not narrowly tailored to achieve any such interest.

70.    Defendants' motive in repeatedly targeting Plaintiffs for a specific line of invasive religious questioning at the border is both discriminatory and retaliatory.

WHEREFORE, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory and punitive damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT II
### VIOLATION OF THE FIRST AMENDMENT
### TO THE UNITED STATES CONSTITUTION
**(Establishment Clause)**

71. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72. In choosing to exercise their religion, Plaintiffs are engaging in a constitutionally protected activity.

73. Defendants' above-described actions, policies, course of conduct, or pattern of practice were substantially prompted by Plaintiffs' religious exercise.

74. Defendants' above-described actions have deprived and continue to deprive Plaintiff's First Amendment rights to be free from religious discrimination in violation of the Establishment Clause of the United States Constitution because Defendants have and continue to repeatedly discriminate against, target, and detain Plaintiffs for the purpose of questioning Plaintiffs invasive questions about their religious beliefs and practices.

75. Defendants' above-described actions in targeting Muslim American travelers and questioning them about their specific beliefs and practices, and not targeting travelers of other faiths or questioning them about their specific beliefs and practices suggests or amounts to a

preference of a religion over another in violation of the Establishment Clause of the United States Constitution.

76. Defendants' above-described actions constitute a substantial burden on Plaintiffs' First Amendment rights to free exercise of religion, an adverse action against Plaintiffs motivated by Plaintiffs' religious beliefs and practices, and an action that targets religious conduct for distinctive treatment.

77. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate, permit or tolerate repeatedly discriminating against and targeting Plaintiffs and subjecting them to invasive questioning regarding their religious beliefs would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion. Repeated prolonged detentions and invasive interrogations based on Plaintiffs' religious practices constitute harassment and retaliation that have caused psychological harm to Plaintiffs.

78. Repeatedly detaining Plaintiffs for the purpose of gathering information about their religious practices and beliefs does not serve a legitimate, public or valid law enforcement purpose or a compelling state interest.

79. Even assuming the Defendants' actions does further a compelling government interest, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and religious practices is not narrowly tailored to achieve any such interest.

80. Defendants' motive in repeatedly targeting Plaintiffs for a specific line of invasive religious questioning at the border is both discriminatory and retaliatory.

WHEREFORE, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory and punitive damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

**COUNT III**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**(Retaliation)**

81. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

82. In choosing to exercise their religion, Plaintiffs are engaging in a constitutionally protected activity.

83. Defendants' above-described actions, policies, course of conduct, or pattern of practice were substantially prompted by Plaintiffs' religious exercise.

84. Defendants' above-described actions have deprived and continue to deprive Plaintiff's First Amendment rights to free exercise of religion and to be free from religious discrimination in violation of the Free Exercise Clause and Establishment Clause of the United States Constitution because Defendants have and continue to repeatedly discriminate against, target, and detain Plaintiffs for the purpose of questioning Plaintiffs invasive questions about their religious beliefs and practices.

85. Defendants' above-described actions constitute a substantial burden on Plaintiffs' First Amendment rights, an adverse action against Plaintiffs motivated by Plaintiffs' religious beliefs and practices, and an action that targets religious conduct for distinctive treatment.

86. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit repeatedly discriminating against and targeting Plaintiffs and subjecting them to invasive questioning regarding their religious beliefs would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion. Repeated prolonged detentions and invasive interrogations based on Plaintiffs' religious practices constitute harassment and retaliation that have caused psychological harm to Plaintiffs.

87. Repeatedly detaining Plaintiffs for the purpose of gathering information about their religious practices and beliefs does not serve a legitimate, public or valid law enforcement purpose or a compelling state interest.

88. Even assuming the Defendants' actions does further a compelling government interest, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and religious practices is not narrowly tailored to achieve any such interest.

89. Defendants' motive in repeatedly targeting Plaintiffs for a specific line of invasive religious questioning at the border is both discriminatory and retaliatory.

WHEREFORE, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory and punitive damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

### COUNT IV
### VIOLATION OF THE FIFTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION
### (Equal Protection)

90. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

91. All Plaintiffs have been subjected to a substantially similar line of questioning about their religious beliefs and religious practices as other Muslim Americans travelers by Defendants at the United States-Canada border and other international ports of entry.

92. Defendants' unlawful repeated targeting of Plaintiffs for a line of religious questioning based solely on their religious beliefs and religious practices violates their rights to equal protection guaranteed by the Fifth Amendment to the United States Constitution because persons of other faiths similarly situated as Plaintiffs are not repeatedly asked similar questions about their religion and religious practices.

93. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the above-described treatment of Plaintiffs are discriminatory and constitute an action that targets religious conduct for distinctive treatment.

94. Defendants' above-described actions, policies, course of conduct, or pattern of practice that mandate or permit the above-described treatment have had a discriminatory effect upon and have disparately impacted Muslim American travelers, and not travelers of other faiths.

95. Defendants' above-described actions constitute a substantial burden on Plaintiffs' First Amendment rights, an adverse action against Plaintiffs motivated by Plaintiffs' religious beliefs and practices, and an action that targets religious conduct for distinctive treatment.

96. Defendants' repeated and invasive questioning of Plaintiffs about their religion and religious practices does not serve a compelling state interest or a legitimate or public purpose.

97. Even assuming the Defendants' actions does further a compelling government interest, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and religious practices is not narrowly tailored to achieve any such interest.

WHEREFORE, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory and punitive damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## COUNT V
## VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT
### (42 U.S.C. § 2000bb, *et seq.*)

98. Plaintiffs hereby reallege and incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

99. Defendants' above-described actions, which include but are not limited to, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and practices, substantially burden Plaintiffs' rights to free exercise of their religion.

100.    Defendants' actions described above are not in furtherance of a compelling government interest.

101.    Even assuming the Defendants' actions further a compelling government interest, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and religious practices is not the least restrictive means of furthering any such interest.

19

102.    As a direct and proximate cause of Defendants' actions, Plaintiffs have been harmed.

103.    Plaintiffs' harm includes, but is not limited to, a chilling effect on Plaintiffs' and other Muslim Americans' right to free exercise of religion and free speech and psychological harm, and they are entitled to all legal and equitable remedies under the Religious Freedom Restoration Act ("RFRA").

104.    Defendants' unlawful actions caused Plaintiffs harm and Plaintiffs are entitled to injunctive relief, and compensatory damages against the individual Defendants, and all such other relief this Court deems just and proper in addition to costs and attorneys' fees, as provided under ("RFRA").

WHEREFORE, Plaintiffs request this Honorable Court grant injunctive relief barring Defendants from engaging in further unconstitutional practices in questioning Plaintiffs about their religious beliefs and religious practices, compensatory and punitive damages against the individual defendants, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

WHEREFORE, Plaintiffs respectfully request:

1.    A declaratory judgment that Defendants' policies, practices, and customs violate the First and Fifth Amendments to the United States Constitution, and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*.;

2.    An injunction that:

    a.    bars Defendants from engaging in further unconstitutional practices by questioning Plaintiffs about their religious beliefs and religious practices, and,

    b.    requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, eliminating any existing policy

whereby Plaintiffs, other Muslim Americans, and others similarly situated are subject to religious questioning at ports of entry;

3.    An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 28 U.S.C. § 2412; and,

4.    Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

NOW COME Plaintiffs, by and through their undersigned counsel, and hereby demand trial by jury of the above-referenced causes of action.

Respectfully submitted,

AKEEL & VALENTINE, PLLC

/s/ Shereef Akeel_____
SHEREEF H. AKEEL (P54345)
SYED H. AKBAR (P67967)
Attorneys for Plaintiffs
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
Phone: (248) 269-9595
shereef@akeelvalentine.com

COUNCIL ON AMERICAN-ISLAMIC
RELATIONS, MICHIGAN

/s/ Lena Masri_____
LENA F. MASRI (P73461)
Attorney for Plaintiffs
21700 Northwestern Hwy, Ste. 815
Southfield, MI 48075
Phone:  (248) 559-2247
lmasri@cair.com

COUNCIL ON AMERICAN-ISLAMIC RELATIONS

*/s/ Gadeir Abbas*
GADEIR I. ABBAS (VA #: 81161)
Attorney for Plaintiffs
453 New Jersey Avenue, SE
Washington, DC 20003
Phone:  (202) 742-6410
gabbas@cair.com

Dated: November 16, 2012