**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ABDULRAHMAN CHERRI,** *et al.*,     ) | |
| ) | |
| Plaintiffs,     ) | Case No. 2:12-cv-11656 |
| ) | District Judge: |
| v.     ) | AVERN COHN |
| ) | |
| **ROBERT S. MUELLER III,** *et al.*,     ) | Magistrate Judge: |
| ) | LAURIE J. MICHAELSON |
| Defendants.     ) | |
| _____ ) | |

## MOTION TO DISMISS
## BY DEFENDANTS ROBERT B. THOMPSON & JEFF SOKOLOWSKI

Defendants Robert B. Thompson and Jeff Sokolowski, in their individual capacities, move to dismiss the first amended complaint for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). The amended complaint fails to state a claim upon which relief can be granted because (1) the individual defendants are entitled to qualified immunity on the constitutional claims and on the claims under the Religious Freedom Restoration Act, and (2) the Religious Freedom Restoration Act does not create a damages claim against individuals. The grounds for this motion are set forth with more specificity in the attached supporting brief.

Pursuant to E.D. Mich. L.R. 7.1, the undersigned contacted counsel for Plaintiffs by e-mail on January 16, 2013 and explained the nature and legal basis of the motion and requested concurrence in this motion. Plaintiffs' counsel did not concur, thus necessitating the filing of this motion.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel

*/s/ Brant S. Levine*
BRANT S. LEVINE (D.C. Bar 472970)
Trial Attorney

United States Department of Justice
Civil Division, Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Email: brant.levine@usdoj.gov
Tel:      (202) 616-4373
Fax:      (202) 616-4314

*Counsel for Defendants Robert B. Thompson*
*and Jeff Sokolowski in their individual*
*capacities*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **ABDULRAHMAN CHERRI,** *et al.,* ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:12-cv-11656 |
| ) | |
| v. ) | District Judge: AVERN COHN |
| ) | |
| **ROBERT S. MUELLER III,** *et al.,* ) | Magistrate Judge: LAURIE J. MICHAELSON |
| ) | |
| Defendants. ) | |
| ————————————————— ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS ROBERT B. THOMPSON & JEFF SOKOLOWSKI**

**ISSUES PRESENTED**

1. Plaintiffs seek damages from two FBI agents whose sole involvement in the case was that they allegedly asked one plaintiff questions about his religion during an interview. Qualified immunity protects government employees from damages claims when their conduct violates no clearly established right. Are the agents immune from Plaintiffs' claims because they did not question some plaintiffs at all and because asking questions about a person's religion does not violate any clearly established right?

2. The Religious Freedom Restoration Act (RFRA) authorizes claims for "appropriate relief against a government." Have Plaintiffs failed to state a damages claim against the agents under RFRA because "appropriate relief against a government" does not include claims for damages against individual employees?

## PRINCIPAL CONTROLLING AUTHORITIES

1. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)
2. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
3. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
4. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)
5. *Sossamon v. Texas*, 131 S. Ct. 1651 (2011)

# TABLE OF CONTENTS

**ISSUES PRESENTED**..............................................................................i

**PRINCIPAL CONTROLLING AUTHORITIES** ...............................ii

**TABLE OF CONTENTS** ...................................................................iii

**TABLE OF AUTHORITIES** ..............................................................iv

**INTRODUCTION** ................................................................................1

**DISCUSSION**......................................................................................2

    I.   QUALIFIED IMMUNITY PROTECTS AGENTS THOMPSON AND
        SOKOLOWSKI FROM ALL OF PLAINTIFFS' CLAIMS. ...........................2

        A.   Plaintiffs have not alleged any conduct by Agents Thompson and
        Sokolowski that violated the First or Fifth Amendment.........................6

        B.   Plaintiffs have not alleged any conduct by Agents Thompson and
        Sokolowski that violated the Religious Freedom Restoration Act...........9

        C.   Plaintiffs cannot show any clearly established law to support their
        claims..........................................................................................10

    II.  THE RELIGIOUS FREEDOM RESTORATION ACT DOES NOT
        AUTHORIZE CLAIMS AGAINST INDIVIDUAL FEDERAL
        EMPLOYEES..................................................................................11

        A.   The text of the Religious Freedom Restoration Act indicates that
        Congress did not authorize damages claims against individual
        employees.....................................................................................12

        B.   Consistency in interpreting the text of the Religious Freedom
        Restoration Act and related statutes forecloses reading the law to
        authorize damages claims against individuals....................................14

        C.   The legislative history of the Religious Freedom Restoration Act
        does not suggest that Congress intended to authorize damages claims
        against individuals.........................................................................17

**CONCLUSION** ..................................................................................**18**

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ................................................................ 17

*Am. Civil Liberties Union of Kentucky v. McCreary County, Ky.,*
  607 F.3d 439 (6th Cir. 2010) ...................................................... 8

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ........................................................ 3, 11, 16

*Ashcroft v. al-Kidd,*
  131 S. Ct. 2074 (2011) ................................................ 3, 4, 10, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................... passim

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir.2001)....................................................... 7

*Barhite v. Caruso,*
  377 F. App'x 508 (6th Cir. 2010) ................................................. 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................... 4, 10

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971) ................................................................. 2

*Bloch v. Samuels,*
  No. 04cv4861, 2006 WL 2239016 (S.D. Tex. Aug. 3, 2006) ......................... 12

*Bush v. Lucas,*
  462 U.S. 367 (1983) ........................................................... 17, 18

*Church of God, Inc.,*
  227 F.3d 1110 (9th Cir. 2000) ................................................... 10

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ................................................................. 2

*Clark v. Martinez,*
  543 U.S. 371 (2005) ........................................................... 15, 16

*Clemente v. Vaslo,*
  679 F.3d 482 (6th Cir. 2012) .................................................... 11

*Colvin v. Caruso,*
  605 F.3d 282 (6th Cir. 2010) ................................................ 14, 15

*Corp. of Seventh-Day Adventists v. McGill,*
  617 F.3d 402 (6th Cir. 2010) ................................................ 9, 12

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,*
  648 F.3d 365 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 (2012)........ 4, 7, 8

*Davilla v. Nat'l Inmate Appeals Coordinator,*
  CV212-005, 2012 WL 3780311 (S.D. Ga. Aug. 31, 2012) ..................... 12, 15

*Dolan v. U.S. Postal Serv.,*
  546 U.S. 481 (2006) ............................................................................. 13

*Dole v. United Steelworkers of Am.,*
  494 U.S. 26 (1990) ............................................................................... 13

*Employment Division v. Smith,*
  494 U.S. 872 (1990) ............................................................................. 17

*Feit v. Ward,*
  886 F.2d 848 (7th Cir. 1989) .................................................................. 2

*Frank v. Relin,*
  1 F.3d 1317 (2d Cir. 1993) ..................................................................... 2

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006) ............................................................................... 9

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ............................................................................... 3

*Hunter v. Bryant,*
  502 U.S. 224, 229 (1991) ........................................................................ 3

*Heyne v. Metro. Nashville Pub. Sch.,*
  655 F.3d 556 (6th Cir. 2011) .................................................................. 5

*Jarecki v. G.D. Searle & Co.,*
  367 U.S. 303 (1961) ............................................................................. 13

*Kaemmerling v. Lappin,*
  553 F.3d 669 (D.C. Cir. 2008) ........................................................... 9, 10

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ............................................................................. 13

*Kirby v. City of Elizabeth,*
  388 F.3d 44 (4th Cir. 2004) .................................................................... 2

*Lanman v. Hinson,*
  529 F.3d 673 (6th Cir. 2008) .................................................................. 5

*Living Water Church of God v. Charter Twp. of Meridian,*
  258 F. App'x 729 (6th Cir. 2007) ............................................................. 9

*Malley v. Briggs,*
  475 U.S. 335 (1986) ............................................................................... 3

*Marcilis v. Twp. of Redford,*
  693 F.3d 589 (6th Cir. 2012) .................................................................. 7

v

*Messerschmidt v. Millender,*
    132 S. Ct. 1235 (2012) ................................................................. 3

*Minneci v. Pollard,*
    132 S. Ct. 617 (2012) ................................................................... 2

*Mozert v. Hawkins County Bd. of Educ.,*
    827 F.2d 1058 (6th Cir. 1987) ...................................................... 8

*Nelson v. Miller,*
    570 F.3d 868 (7th Cir. 2009) ...................................................... 15

*Northcross v. Bd. of Ed.,*
    412 U.S. 427 (1973) ................................................................... 15

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
    676 F.3d 829 (9th Cir. 2012) ................................................ 12, 14

*Patel v. U.S. Bureau of Prisons,*
    515 F.3d 807 (8th Cir. 2008) ....................................................... 9

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ..................................................................... 3

*Reichle v. Howards,*
    132 S. Ct. 2088 (2012) ................................................................. 6

*Reilly v. Vadlamudi,*
    680 F.3d 617 (6th Cir. 2012) ....................................................... 3

*Rendelman v. Rouse,*
    569 F.3d 182 (4th Cir. 2009) ...................................................... 15

*Saucier v. Katz,*
    533 U.S. 197 (2001) ..................................................................... 3

*Sharp v. Johnson,*
    669 F.3d 144 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 41 (2012) .................. 15

*Shepard v. NLRB,*
    459 U.S. 344 (1983) ................................................................... 17

*Sherbert v. Verner,*
    374 U.S. 398 (1963) ................................................................... 17

*Smith v. Allen,*
    502 F.3d 1255 (11th Cir. 2007),
    *abrogated on other grounds, Sossamon v. Texas*, 131 S. Ct. 1651 (2011) ..... 15

*Sossamon v. Texas,*
    131 S. Ct. 1651 (2011) ...................................................... 13, 14, 15

*Sossamon v. Texas,*
    560 F.3d 316 (5th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 1651 (2011)
    ................................................................................. 15

vi

*Stafford v. Briggs,*
    444 U.S. 527 (1980) ................................................................ 16

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler,*
    537 U.S. 371 (2003) ................................................................ 13

*Webman v. Fed. Bureau of Prisons,*
    441 F.3d 1022 (D.C. Cir. 2006) .............................................. 14

*Weinberger v. Grimes,*
    No. 07-6461, 2009 WL 331632 (6th Cir. Feb. 10, 2009) ............ 11

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ................................................................ 16

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ................................................................ 17

*Wolfe v. Strankman,*
    392 F.3d 358 (9th Cir. 2004) .................................................... 2

<u>Regulations</u>

42 U.S.C. § 2000bb(a)(4) ............................................................. 17

42 U.S.C. § 2000bb(b)(1) ............................................................. 17

42 U.S.C. § 2000bb-1(a), (b) .......................................................... 9

42 U.S.C. § 2000bb-1(c) ......................................................... 12, 13

42 U.S.C. § 2000bb-2(1) .............................................................. 12

42 U.S.C. §§ 2000bb-2000bb-4 ...................................................... 2

42 U.S.C. §§ 2000cc to 2000cc-5 .................................................. 14

## INTRODUCTION

After being granted leave to amend their complaint while a motion to dismiss was pending, Plaintiffs have filed an amended complaint that contains the same fatal flaws as their original one. Again, Plaintiffs repeat their allegations that they have been frequently stopped, questioned, and detained at the United States border, but they offer no factual support for their conclusion that these actions were discriminatory, much less that any government official actually prevented them from practicing their Islamic faith. This is especially true for FBI Special Agents Robert Thompson and Jeff Sokolowski, who are personally sued for damages even though they are not alleged to have taken any action toward any plaintiff at any of the border incidents. *See* First Amended Complaint, Doc. No. 21, ("Am. Compl.")¶¶ 8-9, 20-22.

Just like the original complaint, the sole factual basis for the individual-capacity claims against Agents Thompson and Sokolowski remains that they allegedly went to one plaintiff's home on one occasion and asked him questions about his religion. According to this plaintiff, Abdulrahman Cherri, the agents told him that they were aware that he was being questioned and detained at the border and if he answered certain questions, they would try to help correct the problem at the border. *See id.* ¶¶ 20-22. Cherri further alleges that Agents Thompson and Sokolowski then asked him questions similar to those that he was asked at the border about his Islamic faith and religious practices. *See id.* ¶ 22. But neither Cherri nor any other plaintiff alleges that Agents Thompson and Sokolowski had any involvement at the border, nor do they allege facts to show that the FBI agents' questions chilled them from practicing their Islamic faith.

Although these flaws were highlighted in Agents Thompson and Sokolowski's prior motion to dismiss, Plaintiffs nonetheless still seek to recover

from the personal assets of these agents. Plaintiffs seek to do so under the same two legal theories. First, they assert claims directly under the Constitution for alleged First and Fifth Amendment violations. *See id.* ¶¶ 63-97. This sort of damages claim directly under the Constitution is usually called a "*Bivens* action" after *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Minneci v. Pollard*, 132 S. Ct. 617, 620 (2012). Second, Plaintiffs seek damages under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to bb-4. *See* Am. Compl. ¶¶ 98-104. As detailed below, Plaintiffs' complaint for damages falls far short of stating a claim against Agents Thompson and Sokolowski on either of these theories.[1]

### DISCUSSION

### I.   QUALIFIED IMMUNITY PROTECTS AGENTS THOMPSON AND SOKOLOWSKI FROM ALL OF PLAINTIFFS' CLAIMS.

Plaintiffs are attempting to sue Agents Thompson and Sokolowski in their individual capacities for purported constitutional and statutory violations.

---

[1] Plaintiffs also seek a "declaratory judgment" and an "injunction" from unspecified "Defendants." *See* Am. Compl. at 20. These declaratory and injunctive claims aim to affect alleged government "policies" and "practices" and therefore appear to be directed only at the official-capacity defendants, rather than Agents Thompson and Sokolowski as individuals. To the extent Plaintiffs seek to pursue declaratory or injunctive claims against Agents Thompson and Sokolowski individually, those claims must be dismissed. Declarations and injunctions designed to affect the conduct of a government entity are available only in a suit against the government itself, that is, an official-capacity suit. *See, e.g., Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004); *Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993); *Scott v. Flowers*, 910 F.2d 201, 213 n.25 (5th Cir. 1990). In addition, for the reasons stated in the brief by the official-capacity defendants, Section II, Plaintiffs' claims for injunctive and declaratory relief are nonjusticiable.

Individual-capacity claims against government employees "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). To guard against these costs, the Supreme Court has granted government officials a qualified immunity that protects them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity "'gives government officials breathing room to make reasonable but mistaken judgments.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011)). Its protection is "ample" and shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 197, 200-01 (2001). *See also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (where defendant seeks qualified immunity, it should be resolved "at the earliest possible stage in litigation"). The burden rests on Plaintiffs to show that the agents are not entitled to immunity. *See Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). To carry this burden, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080. This Court may address either requirement first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court's instruction that a plaintiff seeking to overcome immunity must "plead[] facts," *al-Kidd*, 131 S. Ct. at 2080, is critical. A court

considering the sufficiency of a complaint begins "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 372 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 (2012). The court should not give any presumption of truth to "mere conclusory statements," or "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements.'" *Iqbal*, 556 U.S. at 681 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted, emphasis added). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation and internal quotation marks omitted). Accordingly, the series of legal conclusions that makes up the bulk of Plaintiffs' complaint, *see, e.g.*, Am. Compl. ¶¶ 65-70, 73-80, 83-89, 92-97, 99-101, does not serve to state any sort of claim against the agents or to carry Plaintiffs' burden of showing that the agents are not entitled to immunity.

Equally critical is the Supreme Court's instruction that a plaintiff must show that "*the official* violated a statutory or constitutional right," *al-Kidd*, 131 S. Ct. at 2080 (emphasis added). Thus, even if the repeated detention and questioning by CBP officers violated the Constitution—which it did not—it is not enough to allege that Agents Thompson and Sokolowski merely knew about these actions. To pursue a *Bivens* claim, "a plaintiff must plead that each Government-official defendant, through the official's *own individual* actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). *See also Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)

(holding that damages claims against government officials must allege "'facts that demonstrate what *each* defendant did to violate the asserted constitutional right'") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

Here, the sole conduct attributed to Agents Thompson and Sokolowski is that they visited Plaintiff Cherri's home on one occasion to ask him questions. *See* Am. Compl. ¶¶ 20-22. According to the amended complaint, Agents Thompson and Sokolowski told Cherri that they were aware that he was being repeatedly questioned and detained at the border and that if he answered certain questions, they would "try to find out the reasons why Cherri was being repeatedly detained and questioned at the border and correct the problem so that he no longer detained [sic] and questioned at the border." *Id.* Agents Thompson and Sokolowski also allegedly asked Cherri substantially similar questions to those he was allegedly asked at the border by CBP officers, "including, but not limited to, his Islamic beliefs and practices, his primary place of worship, the locations at which he worships, how frequently he attends his primary place of worship, and which sect of Islam he follows." *Id.* ¶ 22. These are the only factual allegations regarding Agents Thompson and Sokolowski in the amended complaint.

Just as important as what is included in the amended complaint is what is missing from it. There is no allegation, for example, that Agents Thompson and Sokolowski participated in any of the alleged border incidents. There is also no allegation that Agents Thompson and Sokolowski ever had any interaction with any plaintiff other than Cherri. And as for Cherri, there is no allegation that Agents Thompson and Sokolowski entered Cherri's home without permission, there is no allegation that Agents Thompson and Sokolowski detained Cherri, and there is no allegation that Agents Thompson and Sokolowski's discussion with Cherri was anything other than consensual.

5

Perhaps most importantly, there is no factual allegation that Agents Thompson and Sokolowski ever precluded Cherri or anyone else from exercising their religious beliefs. Therefore, as detailed below, and as further explained in the Brief in Support of the Motion to Dismiss by the Official Capacity Defendants, Section III, incorporated here by reference, the amended complaint fails to state a claim under the Constitution and RFRA.

### A. Plaintiffs have not alleged any conduct by Agents Thompson and Sokolowski that violated the First or Fifth Amendment.

Plaintiffs' constitutional claims against Agents Thompson and Sokolowski seek damages under the First and Fifth Amendments. *See* Am. Compl. ¶¶ 63-97.[2] In their First Amendment claim, Plaintiffs invoke the Free Exercise Clause, *id.* ¶¶ 63-70, the Establishment Clause, *id.* ¶¶ 71-80, and claim retaliation based on their religious beliefs, *id.* ¶¶ 81-89. In their Fifth Amendment claim, Plaintiffs invoke the equal protection component of the Due Process Clause and assert that they have been treated differently from persons of other religions. *See id.* ¶¶ 90-97.

To support a First or Fifth Amendment *Bivens* claim, a plaintiff "must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. Plaintiffs, however, offer no factual allegations that, if proven, would show that Agents Thompson and Sokolowski acted with a discriminatory purpose. Instead, Plaintiffs make only general statements that do not specify which defendant allegedly violated the First or Fifth Amendment: "Defendants

---

[2] The Supreme Court has "never held that *Bivens* extends to First Amendment claims," *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012), and Agents Thompson and Sokolowski do not concede that it does. But the Court need not address this issue, as courts may dispose of claims on qualified immunity grounds while reserving the question of whether a cause of action is even available. *See, e.g., id.*; *Iqbal*, 556 U.S. at 675.

have and continue to repeatedly discriminate against, target, and detain Plaintiffs for the purpose of questioning Plaintiffs invasive questions about their religious beliefs and practices," Am. Compl. ¶¶ 74, 84; and that "Defendants' above-described actions . . . are discriminatory and constitute an action that targets religious conduct for distinctive treatment," *id.* ¶ 96. These conclusory allegations of motive cannot substitute for factual allegations. *See Iqbal*, 556 U.S. at 680-81 (allegations that officials subjected detainee to harsh conditions "solely on account of [his] religion, race, and/or national origin and for no legitimate or penological interest" were "conclusory and not entitled to be assumed true"); *Ctr. for Bio-Ethical Reform*, 648 F.3d at 377 ("unadorned allegations concerning Defendants' intent and motivation" are insufficient).

As the Sixth Circuit recently emphasized, a *Bivens* complaint should be dismissed if it contains only general references to "defendants" without specifying who performed the allegedly unconstitutional acts. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). *Marcilis* affirmed the dismissal of *Bivens* claims against federal law enforcement officers identified only by their positions, holding that scattershot references to "defendants" cannot overcome qualified immunity: "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [the] minimum standard." *Id.* (quoting *Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001)).

Plaintiffs' First and Fifth Amendment claims against Agents Thompson and Sokolowski fail for the same reason as in *Marcilis*. Each one of their causes of action refers only to "Defendants" without specifying which individual allegedly violated their rights and how that individual allegedly did so. *See* Am. Compl. ¶¶ 65-70, 73-80, 83-89, 92-97, 99-101. In their First Amendment claim, for example, the amended complaint simply recites the elements of such

7

a claim: "Defendants' above-described actions . . . would deter an individual of ordinary firmness from openly exercising his/her right to practice his/her religion," ¶67; and "Defendants' above-described actions constitute a substantial burden on Plaintiffs' First Amendment rights to free exercise of religion," ¶ 76. Likewise, for the Fifth Amendment claim, the amended complaint states that "Defendants' above-described actions . . . are discriminatory and constitute an action that targets religious conduct for distinctive treatment." *Id.* ¶ 93. But at least for Agents Thompson and Sokolowski, those "above-described" actions consist only of the single occasion where they allegedly asked Cherri questions about his religious beliefs.

It is not plausible to suggest that asking someone questions about his religion is akin to preventing that person from exercising his religion. And absent a showing that Plaintiffs were prevented or otherwise chilled from exercising their religious beliefs, there can be no First Amendment violation. *See, e.g., Am. Civil Liberties Union of Kentucky v. McCreary County, Ky.*, 607 F.3d 439, 445 (6th Cir. 2010) (Establishment Clause); *Mozert v. Hawkins County Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987) (Free Exercise Clause); *Ctr. for Bio-Ethical Reform*, 648 F.3d at 377 (retaliation). Likewise, there can be no Fifth Amendment violation because there is no allegation that Agents Thompson and Sokolowski treated Plaintiffs differently than people of other religions. *See Ctr. for Bio-Ethical Reform*, 648 F.3d at 379-80 (requiring a plausible showing of disparate treatment to proceed on an Equal Protection claim). Indeed, there is not a single factual allegation in the amended complaint regarding how Agents Thompson and Sokolowski treated people of other religions. Therefore, these agents are entitled to qualified immunity, and the constitutional claims against them should be dismissed.

**B. Plaintiffs have not alleged any conduct by Agents Thompson and Sokolowski that violated the Religious Freedom Restoration Act.**

Plaintiffs also seek damages from the agents under the Religious Freedom Restoration Act ("RFRA"). *See* Am. Compl. ¶¶ 98-104. RFRA applies when the federal "Government" has "substantially burden[ed]" an "exercise of religion" without demonstrating that the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 423 (2006). For a plaintiff to assert a claim under RFRA, therefore, he must show that a government action "substantially burden[s]" his exercise of a sincerely held religious belief. *See Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010). Plaintiffs' factual allegations do not remotely establish any conduct by the agents that would meet this standard.

A government action "substantially burdens" religious exercise when the action "force[s] an individual to choose between following the precepts of her religion and forfeiting benefits" or "place[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (internal quotation marks omitted). "[T]he 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).[3] "An inconsequential or *de minimis* burden on religious practice does not rise to this level, nor does a burden on activity unimportant to the adherent's religious scheme." *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008); *accord Worldwide*

---

[3] *Barhite* and *Living Water* involved claims under the RFRA's successor statute, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc-5, but "the same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA," *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813-14 (8th Cir. 2008).

9

*Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) ("A substantial burden must be more than an inconvenience." (internal quotation marks omitted)).

The amended complaint does not include any factual allegations that would suggest that any action by Agent Thompson or Agent Sokolowski substantially burdened any plaintiff's religious practice or how it did so. Instead, the amended complaint mechanically recites that "Defendants' above-described actions, which include but are not limited to, repeatedly discriminating against Plaintiffs by targeting and detaining them for the purpose of questioning them about their Islamic beliefs and practices, substantially burden Plaintiffs' rights to free exercise of their religion." Am. Compl. ¶ 99. As explained above, however, a complaint must include more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Bell Atl.*, 550 U.S. at 555). Plaintiffs' bare assertion of a substantial burden without identifying any religious belief or practice that the agents allegedly inhibited is not enough to allege a "substantial burden." *See Kaemmerling*, 553 F.3d at 679. Therefore, Agents Thompson and Sokolowski are entitled to qualified immunity on Plaintiffs' RFRA claim.

### C. Plaintiffs cannot show any clearly established law to support their claims.

Although the failure of Plaintiffs to show a violation of the Constitution or RFRA is alone sufficient to grant qualified immunity to Agents Thompson and Sokolowski, another reason they are immune from suit is because there is no clearly established law regarding the allegations in the complaint. *See al-Kidd*, 131 S. Ct. at 2080. A right is clearly established when "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every

'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (quoting *Anderson*, 483 U.S. at 640) (alterations in *al-Kidd*). Although "a case directly on point" is not required to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 2083. "The case law must dictate, that is, truly compel (not just suggest or raise a question about) the conclusion for every like-situated, reasonable government agent that what [the] defendant is doing violates federal law *in the circumstances*." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (internal quotation marks omitted).

Here, there is no case law that would compel the conclusion that the First or Fifth Amendment can be violated by a law enforcement officer who (1) asks someone questions about his religious beliefs and practices or (2) knows that a person has been repeatedly stopped and detained at the border by other law enforcement officers. Nor is there any case law to suggest that this conduct imposes the sort of "substantial burden" that RFRA prohibits. *See Weinberger v. Grimes*, No. 07-6461, 2009 WL 331632, at *5-7 (6th Cir. Feb. 10, 2009) (invoking qualified immunity to dispose of RFRA damages claims against individuals). And in any event, as detailed in the next section, there is no clearly established law that RFRA even allows damages suits against individuals. For all of these reasons, Agents Thompson and Sokolowski should be granted qualified immunity on all of Plaintiffs' claims.

## II. THE RELIGIOUS FREEDOM RESTORATION ACT DOES NOT AUTHORIZE CLAIMS AGAINST INDIVIDUAL FEDERAL EMPLOYEES.

As the Supreme Court demonstrated in *Ashcroft v. Iqbal*, a court can dispose of claims based on qualified immunity without accepting that a cause of action to pursue damages exists. *See* 556 U.S. at 675. In this case, as explained above, the Court can likewise dispose of all claims against Agents

Thompson and Sokolowski based on qualified immunity , including those brought under RFRA. But Plaintiffs' RFRA claims fail for another reason as well: RFRA does not allow claims against individual federal employees. Rather, RFRA provides that "[a] person whose religious exercise has been burdened in violation of [its provisions] may assert that violation as a claim or defense in a judicial proceeding and obtain *appropriate relief against a government*." 42 U.S.C. § 2000bb-1(c) (emphasis added). This provision, moreover, does not authorize claims for damages, whether against the government, *see Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 840-41 (9th Cir. 2012), or individual federal employees, *see Davila v. Nat'l Inmate Appeals Coordinator*, CV212-005, 2012 WL 3780311 (S.D. Ga. Aug. 31, 2012).

   **A.    The text of the Religious Freedom Restoration Act indicates that Congress did not authorize damages claims against individual employees.**

The phrase "appropriate relief against a government" suggests that claims may be pursued against a government entity, not an individual employee. *See Bloch v. Samuels*, No. 04cv4861, 2006 WL 2239016, at *7 (S.D. Tex. Aug. 3, 2006). As the Sixth Circuit explained in holding that RFRA does not apply in suits by private parties seeking to enforce federal laws against other private parties, "[t]he text of the statute makes quite clear that Congress intended RFRA to apply only to suits in which the government is a party." *Gen. Conference Corp.*, 617 F.3d at 410.

RFRA's definition of "government," 42 U.S.C. § 2000bb-2(1), is consistent with this commonsense reading. RFRA defines "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity," 42 U.S.C. § 2000bb-2(1). In this definition, the phrase "official (or other person

acting under color of law" evokes the familiar distinction between two types of suits against government employees: official-capacity suits and individual-capacity suits. *See generally Kentucky v. Graham*, 473 U.S. 159, 165 (1985); Fed. R. Civ. P. 4(i)(2), (3). When a plaintiff sues an employee in her "official" capacity, the claims are nominally against an employee but in reality run against the government itself. *See Graham*, 473 U.S. at 165. In contrast, when a plaintiff sues an employee in her "individual" capacity, the claims are against the employee's own assets. The term "official," therefore, refers to an official-capacity claim—a claim that, consistent with RFRA's text, would seek "relief against a government," 42 U.S.C. § 2000bb-1(c).

Likewise, traditional canons of statutory interpretation confirm that "other person acting under color of law" should also be read to reach only suits against the government itself. When, as in this case, a list of specific terms ends with a reference to "other" such items, courts commonly use interpretive canons to limit the list's scope. *See, e.g.*, *Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011) (using canons to interpret phrase "other Federal statute prohibiting discrimination"); *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003) (using canons to limit scope of phrase "other legal process"). Under the canon *noscitur a sociis* ("known by its associates"), "words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (internal quotation marks omitted). This canon is "'often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486-87 (2006) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)). And under the canon *ejusdem generis* ("of the same class"), a residual "other" clause is

"construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Sossamon*, 131 S. Ct. at 1662.

As applied to the phrase "branch, department, agency, instrumentality, and official (or other person acting under color of law)," these canons show that RFRA's definition of "government" does not reach individual employees. All of the terms preceding the reference to "other person"—"branch," "department," "agency," "instrumentality," and "official"— refer to the government itself. Therefore, "other person" should be read, in concert with the preceding terms, to authorize only official-capacity suits, that is, suits nominally against a "person" but in actuality against a government.  Accordingly, plaintiffs' attempt to raise claims against the agents under RFRA fails and the claims should be dismissed.

**B.  Consistency in interpreting the text of the Religious Freedom Restoration Act and related statutes forecloses reading the law to authorize damages claims against individuals.**

Courts have also interpreted the phrase "appropriate relief against a government" to exclude damages claims. The phrase does not, for instance, authorize claims under RFRA for money damages against the federal government itself because it does not unambiguously waive sovereign immunity. *See Oklevueha Native Am. Church of Hawaii, Inc.*, 676 F.3d at 840-41; *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006). Nor does an identical phrase in RFRA's successor statute, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, authorize damages claims. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). In *Sossamon v. Texas*, the Supreme Court interpreted RLUIPA's authorization of "appropriate relief against a government" to exclude damages claims against the federal government. 131 S. Ct. at 1659-60. And the courts of

appeals have uniformly ruled that "appropriate relief against a government" does not include damages claims against individual defendants either. *See Colvin*, 605 F.3d at 289; *accord Sharp v. Johnson*, 669 F.3d 144, 153-55 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 41(2012); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 1651; *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds, Sossamon*, 131 S. Ct. 1651.

The same words in the same statutory provision cannot have different meanings in different factual contexts. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one."). And when Congress uses similar language in statutes with a similar purpose, that language should be interpreted consistently. *See Northcross v. Bd. of Ed.*, 412 U.S. 427, 428 (1973). Another district court recently relied on this principle in dismissing individual-capacity claims for damages under RFRA, finding that the statute cannot be read to authorize such claims. *See Davilla*, 2012 WL 3780311 *2. Indeed, to construe "appropriate relief against a government" to allow damages claims against individual federal employees would make them the *only* class of defendants subject to damages suits under RFRA.

Granted, the cases interpreting this phrase in other contexts have turned on interpretive considerations not present here, such as the need to interpret statutes to avoid waivers of sovereign immunity where possible, *see, e.g.*, *Sossamon*, 131 S. Ct. at 1659-60, and to avoid overstepping Congress' authority under the Spending Clause, *see, e.g.*, *Sharp*, 669 F.3d at 153-55. But the absence of those particular concerns in this case does not justify interpreting "appropriate relief against a government" differently when

15

individual defendants' assets are at issue. When courts give a statute a limiting construction called for by one of the statute's applications, that construction conclusively establishes the statute's meaning, "even though other of the statute's applications, standing alone, would not support the same limitation." *Clark*, 543 U.S. at 380. "The lowest common denominator, as it were, must govern." *Id.* Here, the lowest common denominator of the phrase "appropriate relief against a government" is an interpretation that excludes damages claims. Therefore, that interpretation should apply to exclude damages claims against individual defendants as well.

Moreover, just as constitutional concerns required a limiting construction when sovereign immunity and the Spending Clause were in play, so too do constitutional concerns weigh in favor of a limiting construction here. Because individual-capacity liability carries such "substantial social costs," *Anderson*, 483 U.S. at 638, and because "Congress is in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf," *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) (internal quotation marks omitted), it makes sense for courts to refrain from reading a statute as creating an individual-capacity damages claim unless Congress has clearly created one. *Cf. Stafford v. Briggs*, 444 U.S. 527, 544 (1980) (declining, in light of concerns about individual-capacity liability, to read venue statute to authorize nationwide venue for suits against individual employees). Due regard for the serious implications of creating damages claims against individual employees weighs against interpreting RFRA to create such claims.

16

### C.     The legislative history of the Religious Freedom Restoration Act does not suggest that Congress intended to authorize damages claims against individuals.

Nothing in Congress' stated purpose for passing RFRA suggests that Congress contemplated damages claims against individual federal employees. Congress passed RFRA in reaction to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), which held that neutral laws of general applicability do not violate the Free Exercise Clause even if they incidentally burden religious practice. 42 U.S.C. § 2000bb(a)(4). Congress intended "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)," which required governments to demonstrate a compelling interest to justify laws that incidentally burdened religious practices. 42 U.S.C. § 2000bb(b)(1); *see Sherbert*, 374 U.S. at 403-04, 406; *Yoder*, 406 U.S. at 220.

But just because Congress intended to codify a particular legal standard does not mean that Congress intended to create an individual-capacity damages action to enforce that standard. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (explaining that courts may not create causes of action in the absence of statutory intent "no matter how desirable that might be as a policy matter, or how compatible with the statute"); *Shepard v. NLRB*, 459 U.S. 344, 351 (1983) ("Congress is free to provide a damage remedy for some violations of federal law, and not for others."). Nor can we presume that Congress understood or intended that reinstating this legal standard somehow implicitly authorized a cause of action for damages. At the time RFRA passed, the Supreme Court "ha[d] not found an implied damages remedy under the Free Exercise Clause," and in fact "ha[d] declined to extend *Bivens* to a claim sounding in the First Amendment." *See Iqbal*, 556 U.S. at 675 (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). And since RFRA, the Court has made abundantly

17

clear that such actions are "disfavored." *See id.* Thus, interpreting RFRA to authorize claims only against the government itself, not individuals, would not frustrate its purpose.

## CONCLUSION

Plaintiffs claim damages from the personal resources of Agent Thompson and Agent Sokolowski based on a single factual allegation that they asked one Plaintiff questions about his religion on one occasion. For all the reasons stated above, these claims cannot proceed and should be dismissed.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel

/s/ *Brant S. Levine*
BRANT S. LEVINE (D.C. Bar 472970)
Trial Attorney

United States Department of Justice
Civil Division, Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Email: brant.levine@usdoj.gov
Tel:      (202) 616-4373
Fax:      (202) 616-4314

*Counsel for Defendants Robert B. Thompson and Jeff Sokolowski in their individual capacities*

**Certificate of Service**

I hereby certify that on January 18, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

- **Judson O. Littleton  judson.o.littleton@usdoj.gov**
- **Gadeir I. Abbas  gabbas@cair.com**
- **Shereef H. Akeel  shereef@akeelvalentine.com**
- **Lena F Masri  riqbal@cair.com, lmasri@cair.com**
- **Jennifer E. Nimer  jnimer@cair.com**

I further hereby certify that I have mailed by United States Postal Service the foregoing paper to the following non-ECF participants:

- **None**

/s/ Brant S. Levine_____
BRANT S. LEVINE (D.C. Bar 472970)
Trial Attorney
United States Department of Justice, Civil Division
Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Email: brant.levine@usdoj.gov
Tel:   (202) 616-4373
Fax:   (202) 616-4314