UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULRAHMAN CHERRI,
ET AL.,

PLAINTIFFS,

v.

JAMES B. COMEY, JR.
ET AL.,

DEFENDANTS.

No. 2:12-CV-11656

District Judge: AVERN COHN
Magistrate: UNA

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**AND**

**DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER**

## ISSUES PRESENTED

Plaintiffs' only surviving claim is that they, as Muslim Americans, were asked religious questions when crossing the U.S. border at ports of entry, while other similarly-situated non-Muslims were not asked religious questions.  Plaintiffs have engaged in extensive discovery.  Defendants have acceded to the 10 depositions provided for by Federal R. Civ. P. 30, even though not all the notices were timely.  Defendants have responded to four sets of requests for production of documents, even though only two were timely.  And Defendants have responded to two sets of interrogatories, even though neither was timely.  In addition to all of this discovery, Plaintiffs now move to compel the disclosure of three documents listed on Defendants' privilege logs and seek three additional depositions under Fed. R. Civ. P. 30(b)(6).  The issues presented in Plaintiffs' motion to compel and Defendants' cross-motion for a protective order are these:

(1) Whether the law enforcement privilege protects Defendants from producing the redacted portions of a U.S. Immigration and Customs Enforcement Sample Questionnaire and two training documents withheld in full by the Federal Bureau of Investigation?

(2) Whether Defendants are entitled to a protective order against Plaintiffs' Rule 30(b)(6) deposition notices because the notices are untimely and

exceed the number of depositions permitted under the Federal Rules, and because the 33 topics in the notices are overly broad, cumulative, and unduly burdensome?

## <u>PRINCIPAL AUTHORITIES</u>

1.) <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1984)

2.) <u>Surles ex rel. Johnson v. Greyhound Lines, Inc.</u>, 474 F.3d 288 (6th Cir. 2007)

3.) <u>In re New York City</u>, 607 F.3d 923 (2d Cir. 2010)

4.) <u>U.S. v. $463,497.72</u>, 779 F. Supp. 2d 696 (E.D. Mich. 2011)

5.) <u>In re Packaged Ice Antitrust Litig.</u>, 2011 WL 1790189 (E.D. Mich. May 10, 2011)

6.) <u>Equal Emp't Opportunity Comm'n v. Chrysler LLC</u>, 2008 WL 2622948 (E.D. Mich. July 2, 2008)

7.) <u>Parrottino v. Bankers Life & Cas. Co.</u>, 2014 WL 1516195 (E.D. Mich. Apr. 17, 2014)

8.) <u>Phoenix Life Ins. Co. v. Raider-Dennis Agency, Inc.</u>, 2010 WL 4901181 (E.D. Mich. Nov. 24, 2010)

9.) <u>Richardson v. Rock City Mech. Co., LLC</u>, 2010 WL 711830 (M.D. Tenn. Feb. 24, 2010)

# INTRODUCTION

The only remaining claim in this lawsuit is a Fifth Amendment equal protection claim. Plaintiffs allege that they, Muslim Americans entering the United States at ports of entry, were asked questions about their religion, while similarly-situated non-Muslim travelers were not. As part of the discovery on this one claim, Plaintiffs have already taken nine depositions, received approximately 3,500 pages of documents (in response to multiple sets of requests for production of documents), and received responses to their interrogatories. Nonetheless, on March 16, 2015, Plaintiffs made an untimely motion to compel the following additional discovery from Defendants:

> (1) a fourth set of requests for production of documents (containing 13 additional requests addressed to U.S. Immigration and Customs Enforcement (ICE));
>
> (2) a second set of interrogatories (containing 3 interrogatories addressed to ICE);
>
> (3) a deposition of ICE Special Agent Matthew Sabo;
>
> (4) an unredacted version of ICE's Sample Questionnaire (Bates No. ICE000001-000005);
>
> (5) the production of the documents numbered FBI #1, #2 and #4 on the Federal Bureau of Investigation's (FBI) privilege log; and

(6) three Fed. R. Civ. P. 30(b)(6) depositions consisting of 33 broad topics addressed to ICE (6 topics), U.S. Customs and Border Protection (CBP) (14 topics), and the FBI (13 topics).

In response, Defendants carefully reviewed the record of the litigation, including the previous discovery, and agreed to the following additional discovery (using the numbers listed above): (1) on March 23, 2015 Defendants responded to Plaintiffs' Fourth Set of Requests for Production of Documents; (2) on March 23, 2105, Defendants responded to Plaintiffs' Second Set of Interrogatories; (3) Defendants agreed to make ICE Special Agent Sabo available for a deposition; and (5) Defendants produced FBI #1 in its entirety.  Thus, the motion to compel is now narrowed to three documents (an unredacted version of the ICE Sample Questionnaire, FBI #2 and FBI #4), and the three 30(b)(6) depositions.  Defendants oppose producing the three documents and hereby move for a protective order from the notices for Rule 30(b)(6) depositions.

Defendants oppose any further discovery on the grounds that it is untimely. Discovery closed on July 7, 2014.  Even the additional discovery period the Court permitted for specific, limited discovery, closed on December 1, 2014.  See Minute Order Resetting Scheduling Order Deadlines (Aug. 7, 2014).

Defendants oppose producing an unredacted version of the ICE Sample Questionnaire because the redacted information is not relevant (Defendants have

2

produced the questions that relate to religion) and because it is protected by the law enforcement privilege.  Defendants have submitted the Declaration of Derek Benner, Deputy Executive Associate Director, Homeland Security Investigations for ICE, attached as Exhibit A, which explains how providing an unredacted version of the ICE Sample Questionnaire would reveal law enforcement techniques.  (As per the Court's order, Defendants have submitted an unredacted version of the Sample Questionnaire to the Court for its ex parte and in camera review.)

Defendants oppose producing FBI #2 and FBI #4 because they are protected from disclosure by the law enforcement privilege.  (As per the Court's order, Defendants have submitted FBI #2 and FBI #4 to the Court for its ex parte and in camera review.)  In support of the assertion of this privilege, Defendants have submitted a declaration from the appropriate FBI official (ex parte and in camera). FBI #2 is also classified and contains national security information, so if the Court does not agree that FBI #2 is protected by the law enforcement privilege, Defendants request additional time to consider whether an assertion of the state secrets privilege is appropriate.

Defendants also seek a protective order from all 33 topics set forth in the Rule 30(b)(6) deposition notices because the deposition notices were untimely;

3

Plaintiffs have already noticed the ten depositions provided for by the Federal Rules of Civil Procedure;  the breadth of the 30(b)(6) topics creates an undue burden on Defendants; the topics are overbroad and irrelevant to the sole remaining issue in the case; and the discovery would be cumulative in light of the previous discovery and the stipulations proffered by Defendants, including CBP's proffer to designate the appropriate portions of a previous deposition as 30(b)(6) testimony and the FBI's proffer to stipulate, *inter alia*, that the relevant policy does not prohibit FBI agents from asking religious questions.

Accordingly, Plaintiffs' motion to compel the release of the three documents should be denied, and Defendants should be granted a protective order from the three 30(b)(6) deposition notices.

## BACKGROUND

On April 13, 2012, Plaintiffs filed this lawsuit and brought five claims alleging that official-capacity Defendants FBI, CBP, and Department of Homeland Security (DHS) violated their rights protected under the Constitution, and under the Religious Freedom Restoration Act.  See ECF 21 (amended complaint).   On June 11, 2013, the Court dismissed four of those five claims, leaving only Plaintiffs' contention that Defendants violated their equal protection rights under the Fifth Amendment.  ECF No. 44.  The Court explained that "Plaintiffs are

challenging the[ir] religious questioning," id. at 2, and noted that their equal protection claim rests on the allegations that Defendants' "policy, custom and practice [of religious questioning] is only applied against Muslims, and not travelers of other faiths," id. at 29.

The parties then engaged in discovery, which included requests for the production of documents, interrogatories, requests for admission, and depositions. Defendants produced approximately 3,500 pages of records to Plaintiffs.  After the deadline for serving written discovery closed on March 14, 2014, see ECF No. 61, Plaintiffs took 9 depositions: 7 of CBP officers who interviewed Plaintiffs during border crossings when they alleged inappropriate religious questioning; CBP's Director of Field Operations for the ports of entry in Michigan; and the DHS Civil Rights and Civil Liberties official who investigated Plaintiffs' complaints of inappropriate religious questioning.  Defendants deposed all three Plaintiffs.  On July 3, 2014, Plaintiffs emailed Defendants a notice for a 30(b)(6) deposition of FBI.  Discovery closed on July 7, 2014, ECF No. 61, and motions for summary judgment were due on August 22, 2014, id. & ECF No. 57.

On August 17, 2014, Plaintiffs emailed Defendants additional requests for written discovery, both requests for production and interrogatories, and notices for 30(b)(6) depositions of CBP and FBI.  See ECF No. 78.  Defendants objected

5

because, among other reasons, the parties had previously agreed that the deadline

for serving written discovery was March 14, 2014, and because the deadline for

completing all discovery was July 7, 2014.  ECF No. 61.[1]  The Court held a

telephonic conference on this issue and, over Defendants' objections, allowed

Plaintiffs to serve these additional requests for written discovery on September 23,

2014.  ECF No. 78.  The Court deferred ruling on Plaintiffs' notices for 30(b)(6)

depositions of CBP and FBI pending the completion of written discovery.  The

parties subsequently agreed to a stipulated order limiting the scope of this

additional written discovery.  ECF No. 83.  Defendants produced additional

documents and responded to Plaintiffs' interrogatories.  The Court ordered

discovery to close on December 1, 2014.  See Minute Order (Aug. 7, 2014).

On February 13, 2015, Plaintiffs sought a telephone conference with the

Court to address certain discovery disputes.  See ECF No. 84.  During that

conference, the Court allowed Plaintiffs to file a motion to compel discovery.  See

id.  On February 19, 2015, Plaintiffs served their Fourth Set of Requests for

Production of Documents and Second Set of Interrogatories, which sought

discovery from ICE; Defendants responded on March 23, 2015.  On March 16,

---

[1] On May 2, 2014, Plaintiffs moved to amend the discovery plan by, among other
things, extending the deadline for serving written discovery until July 7, 2014.
ECF No. 64.  But, on May 30, 2014, Plaintiffs withdrew that motion.  ECF No. 74.

2015, Plaintiffs filed their motion to compel discovery.  ECF No. 86 ("Motion" or

"Pl. Mot.").  Despite receiving additional written discovery, Plaintiffs did not

change any of the 33 Rule 30(b)(6) deposition topics.  Compare id. Exh. C at 1-9

with ECF No. 79 & 80.

**I.      The Court Should Deny Plaintiffs' Motion to Compel the Disclosure
of Certain Information Identified on Defendants' Privilege Logs
because It is Protected by the Law Enforcement Privilege.**

Plaintiffs move to compel the disclosure of three documents[2] that

Defendants withheld pursuant to the law enforcement privilege: ICE000001-

000005 (withheld in part), FBI #2 (withheld in full), and FBI #4 (withheld in full).

Plaintiffs' Motion should be denied because Defendants have properly asserted and

supported their withholdings.

"The purpose of th[e] [law enforcement] privilege is to prevent disclosure of

law enforcement techniques and procedures, to preserve the confidentiality of

sources, to protect witness and law enforcement personnel, to safeguard the

privacy of individuals involved in an investigation, and otherwise to prevent

interference with an investigation."  In re Dep't of Investigation of the City of

N.Y., 856 F.2d 481, 484 (2d Cir. 1988).  A proper review of an assertion of the law

---

[2] Plaintiffs move to compel the disclosure of the material described in FBI #1, but
Defendants have since disclosed that material to Plaintiffs in its entirety.

enforcement privilege involves three steps.  "First, the party asserting the law

enforcement privilege bears the burden of showing that the privilege indeed applies

to the documents at issue" by showing that the documents contain information

pertaining to law enforcement techniques and procedures, information that would

undermine the confidentiality of sources, information that would endanger witness

and law enforcement personnel, information that would undermine the privacy of

individuals involved in the investigation, or information that would seriously

impair the ability of a law enforcement agency to conduct future investigations.  In

re New York City, 607 F.3d 923, 948 (2d Cir. 2010).[3]  Second, once the privilege

is determined to apply, "the district court must balance the public interest in

nondisclosure against 'the need of a particular litigant for access to the privileged

information.'"  Id. (quoting In re Sealed Case, 856 F.2d at 272).  There is a strong

---

[3] The Sixth Circuit has not addressed the standard that a district court should apply
to evaluate the Government's assertion of the law enforcement privilege.  The
Second Circuit's decision in New York City, however, provides a formalized
analysis of the law enforcement privilege drawn in significant part from the D.C.
Circuit's decision in In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988), see New
York City, 607 F.3d at 944-949, and several district courts in this Circuit have
relied upon that D.C. Circuit decision to determine when information is properly
protected by the law enforcement privilege.  See U.S. v. $463,497.72, 779 F. Supp.
2d 696, 713 (E.D. Mich. 2011) (citing generally to In re Sealed Case); Moody v.
Mich. Gaming Control Bd., No. 12-13593, 2013 WL 3013862, at *4 (E.D. Mich.
June 18, 2013) (same).

presumption against lifting the privilege that may be rebutted only by a showing that the lawsuit is non-frivolous and brought in good faith, that the information sought is not available through other discovery or from other sources, and that the party has a compelling need for the privileged information.  Id.  Third, "[i]f the presumption against disclosure is successfully rebutted [], the district court must then weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required."  Id.

Each of the three documents sought by Plaintiffs is properly protected from disclosure by the law enforcement privilege.

### A. ICE Sample Questionnaire

Defendants produced to Plaintiffs a redacted version of ICE's Sample Questionnaire, which is Bates-numbered ICE000001-000005.[4]  As explained in the Declaration of Derek Benner, Deputy Executive Associate Director, Homeland Security Investigations for ICE, the information that ICE redacted did not involve religious questions and its disclosure risks undermining an investigative technique

---

[4] As per the Court's Order, Defendants have provided an unredacted copy for the Court's ex parte, in camera review.

currently used by ICE, and that information is therefore properly protected from disclosure by the law enforcement privilege.  See Benner Decl. ¶¶ 4-5.

ICE created the Sample Questionnaire to provide their special agents a guide for conducting certain types of investigative interviews.  See id. ¶ 5.  Although ICE expects that its special agents will use their knowledge and experience to formulate interview questions that may be different from those listed in the Sample Questionnaire, that document is a "roadmap" of the "types of information that is of interest to ICE and the types of questions used to obtain that information."  Id.

The information that Defendants have redacted from the Sample Questionnaire is properly protected from disclosure by the law enforcement privilege because it is not relevant to Plaintiffs' equal protection claim, and because its disclosure risks significantly undermining the effectiveness of a law enforcement technique that ICE currently employs.  As explained by Deputy Director Benner, the Sample Questionnaire is a law enforcement technique currently used by ICE special agents.  Id. ¶ 6.  Disclosure of this information could seriously impair ICE's future investigative activities because it would reveal with certainty the types of information of interest to ICE and the questions used to obtain that information, which in turn could enable individuals to devises means of undermining or thwarting ICE's investigative efforts.  Id.; see also In re Packaged

10

Ice Antitrust Litig., No. 08-1952, 2011 WL 1790189, at *7 (E.D. Mich. May 10, 2011) (agreeing that information "that could reveal the investigators' interviewing techniques and evaluative process" is properly protected by the law enforcement privilege) (citing In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 11 (D.D.C. 2010)).  For these reasons, the law enforcement privilege applies to the information redacted from ICE's Sample Questionnaire.

Plaintiffs have not demonstrated a need for the redacted information, much less articulated a reason why the redacted portions of the document should be released.  See Pl. Mot. at 7-8.  In fact, Plaintiffs' discussion of the released questions undermines any such assertion.  Plaintiffs summarize their argument as "the fact that the government is attempting to extract information about the religious beliefs of travelers is of immense public interest that far outweighs their bald assertion of a law enforcement interest which does not pass even the smell test."  Id. at 8.  Defendants have released all of the questions arguably related to religion, Benner Decl. ¶¶ 4-5, accordingly the public interest Plaintiffs' assert has been met.  Defendants have not redacted the portion of the questionnaire that is labeled "Religious Beliefs and Associates," ICE000001, and includes questions like "What is your priest/minister/imam/rabbi's name?" id. at ICE000002.  Nor did Defendants redact certain questions that may indirectly relate to religion, such as

11

"Have you attended any religious schools?" id. at ICE000002; "Do you have any relatives or friends who have been martyred fighting in the defense of your beliefs?" id.; and "Do you plan to visit any church, mosque, temple, conference, or event while in the United States?" id. at ICE000004.[5]  Plaintiffs have not demonstrated how questions *not* about religion are relevant to, let alone would support, their equal protection claim that is premised on religious questioning.  See Pl. Mot. at 10 (describing "the absolute core of th[eir] case" as "religious questioning").  Thus, on balance, the harm that disclosure risks to ICE's investigative efforts overwhelms any purported need that Plaintiffs might have to access the information.  See In re New York City, 607 F.3d at 948.

**B. FBI #2 and FBI #4**

**1. Documents FBI #2 and FBI #4 Are Properly Protected from Disclosure by the Law Enforcement Privilege.**

Plaintiffs also seek to compel the disclosure of two documents, identified on Defendants' privilege logs as FBI #2 and FBI #4, that FBI withheld in full pursuant to the law enforcement privilege.  For the reasons set forth in Defendants' privilege log and set forth in the FBI's declaration, which Defendants submitted to the Court

---

[5] The fact that these questions about religion are not specific to any religion undermines Plaintiffs' claim that this document is a "smoking-gun," Pl. Mot. at 4.

for <u>ex parte</u>, <u>in camera</u> review, both FBI #2 and FBI #4 are properly protected from disclosure pursuant to the law enforcement privilege.

As discussed previously, when evaluating an assertion of the law enforcement privilege, the Court should consider several factors, but perhaps most relevant here, the Court "must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." <u>In re New York City</u>, 607 F.3d at 948 (citation and internal quotation marks omitted). As set forth in Defendants' Privilege Log of FBI Documents, FBI #2 is an "FBI operational training providing guidance on certain categories of investigations, one portion of which included questions related to religion." <u>See</u> Pl. Mot. Exh. E.   The Log further explains that the document "contains law enforcement sensitive information, the disclosure of which would impede or impair the effectiveness of an investigation and/or an investigative technique, method or procedure; and national security information."  The Log described FBI #4 as "Training attended by CBP Officer Janos during his affiliation with the FBI Task Force (described in response to Interrogatory 9)," and explained that it is a law enforcement sensitive document, the disclosure of which could harm the effectiveness of an investigation or an investigative technique, and "contains personally identifying information about individuals not party to this action."   Defendants also note that Plaintiffs

13

deposed Officer Janos and asked him about this training.  See Janos Depo. at 22-26 (attached as Exh. B).  The submitted FBI declaration explains the harms that would flow from disclosure of these two FBI training documents.

Moreover, Plaintiffs have not demonstrated any need for these documents, let alone explained how they would support their equal protection claim.  Officials affiliated with the FBI interviewed only one plaintiff, Plaintiff Cherri, on two occasions.  Plaintiffs have not explained how training documents for *certain* categories of investigations support their equal protection claim that *all* Muslims are asked religious questions when entering the United States through ports of entry while similarly situated individuals of other religions are not.  See Pl. Mot. at 10 (alleging "a pattern, practice, or policy of religious questioning imposed on Muslim travelers").  The fact that FBI officials might allegedly have asked a single plaintiff religious questions during two separate interviews is not sufficient to demonstrate an equal protection violation.

On balance, because the FBI's declaration explains the harm to its law enforcement efforts that are likely to result from disclosure of these documents, and Plaintiffs do not, indeed cannot, demonstrate a need for these documents, FBI's assertion of the law enforcement privilege appropriately protects these documents from disclosure.

14

**2. If the Court Determines that FBI #2 Is Relevant and Is Not Protected from Disclosure by the Law Enforcement Privilege, Defendants Request Additional Time to Consider Whether FBI #2 Is Subject to an Assertion of the State Secrets Privilege.**

Plaintiffs seek to compel the disclosure of document FBI #2 which, as indicated in Defendants' privilege log, contains "national security information." The national security information at issue in FBI #2 is co-extensive with the FBI's assertion of the law enforcement privilege. Therefore, if the Court determines that the national security information included in this document is both relevant to Plaintiffs' equal protection claim and not protected from disclosure by the law enforcement privilege, then Defendants request at least 60 days to consider whether that information is subject to an assertion of the state secrets privilege, which allows the Government to prevent the disclosure of national security information that would otherwise be discoverable in civil litigation where there is a "reasonable danger that compulsion of the evidence will expose [state secrets] which, in the interest of national security, should not be divulged." United States v. Reynolds, 345 U.S. 1, 10 (1953).

Defendants' request for additional time in these circumstances is appropriate for several reasons. First, Defendants did not receive notice that Plaintiffs were seeking to compel the disclosure of the national security information included in

15

this document until Plaintiffs filed their motion to compel.  See L. Civ. R. 7.1(a)(1)

(requiring conferral); Pretrial and Scheduling Order for the Hon. Avery Cohn,

¶ 2(b), (Mar. 23, 2012) (requiring the Court's permission before filing a motion to

compel).  Second, a decision about whether to assert the state secrets privilege is

no ordinary or simple occurrence; rather, it requires a policy judgment at the

highest levels of the Government that the disclosure of certain information

reasonably could be expected to harm national security.  See Reynolds, 345 U.S. at

7-8 (identifying the procedural requirements as (1) a "formal claim of privilege";

(2) "lodged by the head of the department which has control over the matter"; and

(3) made "after actual personal consideration by that officer").  Additionally, as a

matter of Executive Branch policy, former Attorney General Holder established a

rigorous, layered, and careful process for review of a proposed assertion of the

state secrets privilege in a civil case.  See The Attorney General, U.S. Dep't of

Justice, Policies and Procedures Governing Invocation of the State Secrets

Privilege (Sept. 23, 2009).  Given the careful and laborious nature of the review

process and the significant attention required by high-ranking officials, it can

commonly take 60 days or more for a final decision to be made.

Third, the Government should not be required to undertake the rigorous and

weighty task of considering an assertion of the state secrets privilege while there

16

are other grounds on which the present discovery dispute can be resolved.  It is
well-established that the state secrets privilege is afforded special significance and
is "not to be lightly invoked."  <u>Reynolds</u>, 345 U.S. at 7.  The Executive should not
be forced into a decision about whether to assert the privilege where, as here, there
are other means to avoid the issue entirely.  <u>See</u> <u>id.</u> at 11 (criticizing respondents
for seeking discovery against the Government that forced a "showdown" on the
issue of privilege where the need to do so was "greatly minimized by an available
alternative"); <u>cf.</u> <u>Cheney v. U.S. Dist. Court</u>, 542 U.S. 367, 390 (2004)
(encouraging courts "whenever possible" to "explore other avenues" to avoid
forcing an assertion of Executive privilege that may not be necessary).

## II. Defendants Cross-Move for a Protective Order because Plaintiffs' Notices for Three 30(b)(6) Depositions Are Untimely, Exceed the Number of Depositions Provided for under the Rules, Are Unduly Burdensome, and Are Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

Pursuant to Federal Rules 26 and 30, Defendants respectfully request that
the Court issue a protective order prohibiting Plaintiffs from pursuing Rule
30(b)(6) depositions of ICE, CBP, and FBI because (1) the deposition notices were
untimely; (2) Plaintiffs have already noticed the ten depositions provided for by the
Federal Rules; and (3) the breadth of the 30(b)(6) topics creates an undue burden

on Defendants because the topics are overbroad, irrelevant to the sole remaining issue in the case, and cumulative.

Federal Rule 26(c) confers on the Court broad discretion to issue protective orders for good cause.  See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) ("Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").

### A. Defendants' Motion for a Protective Order Should Be Granted because Plaintiffs' 30(b)(6) Deposition Notices Are Untimely.

At Plaintiffs' request, the parties extended the close of fact discovery from April 25, 2014 to July 7, 2014.  ECF No. 61.  Plaintiffs only purported to serve one 30(b)(6) notice of deposition before the close of discovery, and even that was too late.  On Thursday, July 3, 2014, Plaintiffs emailed to Defendants' counsel a 30(b)(6) notice of deposition for the FBI for Monday, July 7, 2014 – there were no business days in between the two dates.  This is not "reasonable written notice" as required by Rule 30(b)(1).  See Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc., No. 11-cv-1665, 2011 WL 5429005, at *8 (E.D. Pa. Nov. 7, 2011) (granting motion to quash subpoenas because they "did not allow a reasonable time to comply" where they allowed three business days for a response).  Plaintiffs did

not even attempt to serve the notices for the CBP and ICE 30(b)(6) depositions before the close of discovery.

Nor does Plaintiffs' Motion present any reason why these depositions were not timely noticed.  See Equal Emp't Opportunity Comm'n v. Chrysler LLC, No. 07-12986, 2008 WL 2622948, at *6 (E.D. Mich. July 2, 2008) ("Plaintiff had ample opportunity to obtain the information it seeks by discovery in the action during the discovery period.  Plaintiff has made no showing that it acted diligently in seeking these depositions.").  In short, the Court should grant Defendants' motion for a protective order barring all three depositions because none of the notices was timely.

> **B. Defendants' Motion for a Protective Order Should Be Granted because Plaintiffs' Proposed 30(b)(6) Depositions Would Exceed the Ten Depositions Permitted by the Federal Rules of Civil Procedure.**

Pursuant to Rule 30(a)(2), Plaintiffs are limited to 10 depositions without leave of Court.  Plaintiffs took 9 depositions during the period of fact discovery, and Defendants agreed that the deposition of ICE Special Agent Matthew Sabo could take place at a later date.  Accordingly, Plaintiffs have reached their limit of 10 depositions permitted under Rule 30(a)(2) without leave of the Court.  It is Plaintiffs' burden to show "compelling circumstances or reason" to exceed the 10

19

deposition limit.  <u>Chrysler</u>, 2008 WL 2622948, at *6.  Plaintiffs' Motion does not

satisfy their burden of demonstrating why they need to exceed this limit, or explain

why they could not have included their 30(b)(6) depositions within the 10

depositions allowed them under the Federal Rules without leave of Court.

Rule 26(b) also allows the Court to limit the "frequency or extent of

discovery otherwise allowed by these rules . . . if it determines that: (i) the

discovery sought is unreasonably cumulative or duplicative . . . [or] (ii) the party

seeking discovery has had ample opportunity to obtain the information by

discovery in the action."  In this instance, both of these factors are met.  Plaintiffs

have already asked the individual deponents about the topics they seek to cover

with Rule 30(b)(6) deponents, have already served four sets of Requests for

Production of Documents that largely overlap the noticed topics, and have

propounded two sets of interrogatories, which asked questions covering the Rule

30(b)(6) topics as well.

There was nothing precluding Plaintiffs from seeking Rule 30(b)(6)

depositions as part of the requisite 10 depositions – they did not need to wait until

they had deposed 7 officers who allegedly asked inappropriate religious questions

of Plaintiffs.  Plaintiffs do not present any argument in support of the alleged need

20

for more than 10 depositions.  Accordingly, Defendants' motion for a protective

order can be granted on this alternative basis.

### C. Defendants' Motion for a Protective Order Should be Granted because Plaintiffs' 30(b)(6) Deposition Topics Are Unduly Burdensome, Overbroad, Duplicative, Cumulative and Seek Irrelevant Information.

The scope of discovery is not unlimited.  "[D]istrict courts have discretion to

limit the scope of discovery where the information sought is overly broad or would

prove unduly burdensome to produce."  Surles ex rel. Johnson v. Greyhound Lines,

Inc., 474 F.3d 288, 305 (6th Cir. 2007).  There is only one claim remaining in this

case, and it is narrow.  This case is not a class action.  Plaintiffs' only surviving

claim is that they, as Muslim Americans, were asked religious questions when

crossing the U.S. border at ports of entry, while other similarly-situated non-

Muslims were not asked religious questions.  Plaintiffs' proposed deposition topics

are not likely to lead to admissible evidence relevant to this claim.  See Phoenix

Life Ins. Co. v. Raider-Dennis Agency, Inc., No. 08-1562, 2010 WL 4901181, at

*2 (E.D. Mich. Nov. 24, 2010) (striking certain 30(b)(6) deposition topics as "not

relevant to the claims or defenses in this matter" even though they "may be

relevant and/or related to the broad subject matter of th[e] action").  Plaintiffs' 33

deposition topics (which will be discussed individually below) are not sufficiently

focused to survive Defendants' motion for a protective order.  See Berwick v.
Hartford Fire Ins. Co., Inc., No. 11-1384, 2012 WL 573939, at *2 (D. Colo. Feb.
21, 2012) ("For Rule 30(b)(6) to function effectively, the requesting party must
take care to designate, with painstaking specificity, the particular subject areas that
are intended to be questioned, and that are relevant to the issues in dispute.
Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to
an impossible task.") (citations and internal quotation marks omitted).

The 30(b)(6) depositions are also cumulative and unduly burdensome in
light of the extensive discovery Plaintiffs have already conducted.  Plaintiffs have
already noticed the 10 depositions to which they are entitled under the rules
without leave of the Court (they have taken 9 and Defendants have agreed to make
the witness available for a 10th, even though discovery has closed).  Plaintiffs have
served four sets of Requests for Production of Documents and received
approximately 3,500 pages of documents in response.  (The third and fourth sets
were untimely, but the Court permitted the third set and Defendants agreed to the
fourth set.)  Plaintiffs propounded two sets of interrogatories, which Defendants
answered.  (Both sets were untimely, but the Court permitted the first set and
Defendants agreed to respond to the second set.)  Plaintiffs now propound three
30(b)(6) depositions consisting of 6 broad topics to be addressed by ICE, 14 by

22

CBP, and 13 by FBI.  Notably, Plaintiffs have refused to alter any of the 33 topics

in light of the additional written discovery they have received.[6]  It would be unduly

burdensome to require ICE, CBP and FBI to prepare deponents—possibly even

multiple deponents for each agency—in light of the breadth of these topics and

their cumulative nature (each topic is discussed separately below).  See SEC v.

Merkin, 283 F.R.D. 689, 698 n.11 (S.D. Fla. 2012) (noting that "preparing 30(b)(6)

witnesses can be burdensome and that selecting and preparing a witness or

witnesses will entail significant effort on the part of the [government]") (citation

and internal quotation marks omitted); Smithkline Beecham Corp. v. Apotex

Corp., No. 98-3952, 2000 WL 116082, *8-9 (N.D. Ill. Jan. 24, 2000) ("Rule

30(b)(6) imposes a duty upon the named [entity] to prepare its selected deponent to

adequately testify not only on matters known by the deponent, but also on subjects

that the entity should reasonably know.") (citations omitted); id. at *10 (finding a

30(b)(6) notice to be "overbroad, unduly burdensome, and an inefficient means

through which to obtain otherwise discoverable information").[7]

---

[6] On November 13, 2014, Defendants responded to Plaintiffs' First Set of
Interrogatories and Third Set of Requests for Production of Documents.  On March
23, 2015, Defendants responded to Plaintiffs' Second Set of Interrogatories and
Fourth Set of Requests for Production of Documents.
[7] Defendants note that the 30(b)(6) notices are also overbroad and unduly
burdensome because they are not limited to any time period, even though the

### 1. Plaintiffs' 30(b)(6) Deposition Notice to ICE

One ICE employee, Special Agent Matthew Sabo, interviewed one of the Plaintiffs (Plaintiff Charafeddine) on one occasion at one port of entry, and Defendants have agreed to the deposition of Special Agent Sabo, even though discovery is closed. Despite ICE's limited role and Defendants' agreement to produce Special Agent Sabo for deposition, Plaintiffs have belatedly served ICE with requests for production of documents, interrogatories, and a 30(b)(6) deposition notice. Defendants have already responded to the requests for documents and the interrogatories. The deposition notice goes far beyond ICE's limited role in this lawsuit and far beyond what is permitted under the Rules.

The 30(b)(6) notice seeks someone to testify about **Topic 1: "**the ICE questionnaire Agent Sabo used when he interviewed Plaintiff Charafeddine." Special Agent Sabo will be well qualified to testify about this and Plaintiffs have not articulated any reason a 30(b)(6) deposition is necessary in addition to Special Agent Sabo. A 30(b)(6) deposition on this topic would only be duplicative.

---

allegations in the complaint only concern events beginning in 2008, the Court only permitted discovery going back 5 years (Telephone Conference of September 23, 2014, p. 36), and the Stipulated Order Limiting the Scope of Plaintiffs' Third Requests for Production of Documents and First Interrogatories to Official-Capacity Defendants (Stipulated Order) limited the time period to five years prior to the filing of the discovery requests. ECF No. 83 at 1.

**Topic 2:**  "The application of the questionnaire at all ports of entry and inside the U.S.," is overbroad and unduly burdensome.  This questionnaire was used to question one Plaintiff on one occasion on November 18, 2008 at the Blue Water Bridge (Port Huron), Michigan – a deposition about its application in an unlimited timeframe, at all ports of entry and inside the United States is far beyond the scope of this lawsuit.  ICE would be unduly burdened by having to identify all instances in which the questionnaire has been used and to prepare an individual or individuals to speak about these practices, no matter when or where they occurred.

**Topics 3 and 4:** "[T]he application of the questionnaire in questioning Muslim Americans about their religious beliefs and practices at all ports of entry and inside the U.S.," and "ICE practices and procedures in questioning Muslim Americans regarding their religious beliefs and practices at all ports of entry and inside the United States," are overbroad and unduly burdensome because they are not tailored to Plaintiffs' claims.  These deposition topics are also cumulative because Defendants have already responded to Plaintiffs' RFPs[8] on the same topics: RFP 2 to ICE seeks, "any and all written policies, protocols, practices, and procedures in connection with [] all records of incidents of, religious profiling

---

[8] In this section of the brief citations to "RFPs" are to Plaintiffs' Third Set of Requests for Production of Documents, unless otherwise indicated.

and/or religious questioning by ICE at ports of entry;" and RFP 3 seeks: "any and all . . . policies, protocols, practices, and procedures in connection with the questioning of Muslim travelers, including, but not limited to questions about their religious beliefs and practices or questions that elicit responses about their religious beliefs and practices by ICE before allowing them to enter the United States." It would be unduly burdensome to require ICE to prepare an individual or individuals to discuss all uses of the questionnaire anywhere in the country. For example, requiring ICE to address its practices and procedures in questioning Muslims could implicate ICE's role in determining whether individuals are victims of religious persecution, a topic unrelated to the case before this Court. It would also be unduly burdensome, if not impossible, to require ICE to identify all instances in which they questioned individuals who are Muslim. Moreover, the questioning of Muslims, with or without the questionnaire, will not shed light on the only remaining issue – whether other similarly-situated non-Muslims were asked religious questions.

**Topic 5** is "Training and educational materials provided to ICE agents." The overbreadth and burdensome nature of this topic is apparent on its face – there is no plausible reason why any and all training ICE provides to its agents would be related to the one-time questioning of a Muslim American at a port of entry. The

Court can take judicial notice that employees are always trained on a wide array of topics starting with simple administrative tasks.  Furthermore, Plaintiffs can depose Special Agent Sabo as to all of his training, as they have for all other officials they have deposed.  This is more than sufficient to elicit the evidence relevant to the issue of whether Plaintiffs were asked religious questions when crossing the U.S. border at ports of entry, while other similarly-situated non-Muslims were not asked religious questions.  Furthermore, Plaintiffs have already sought this information in the form of documents.  Specifically Plaintiffs' RFP 5 sought "educational materials, and training materials of ICE personnel" about, *inter alia*, Islam or Muslims and religious questioning at ports of entry, thus duplicating Topic 5 of the 30(b)(6) deposition notice.

Plaintiffs' final topic to ICE is a catch-all:  **Topic 6:** "Other ICE Policies relevant to Plaintiffs' claims in this lawsuit."  It is unduly burdensome to ask ICE to prepare a deponent on all of its policies in the event that Plaintiffs consider it relevant to "claims" in this lawsuit.  On its face this topic fails to comply with the requirement of Rule 30(b)(6) that Plaintiff "must describe *with reasonable particularity* the matters for examination."  See Tri-State Hosp. Supply Corp. v. United States, 226 F.R.D. 118, 125 (D.D.C. 2005) (notices are overbroad if they include the phrase "including but not limited to").

27

In sum, Plaintiffs cannot justify a 30(b)(6) deposition of ICE for multiple reasons: Only one Plaintiff was interviewed on a single occasion by one ICE agent, which belies the alleged need for Plaintiffs to take a 30(b)(6) deposition of ICE regarding broad topics touching upon agency-wide practices; Plaintiffs can depose Special Agent Sabo (who conducted that single interview of Plaintiff Charafeddine) about the topics set forth in their 30(b)(6) notice, as well as more relevant details about that Special Agent Sabo's questioning of Plaintiff Charafeddine; Plaintiffs do not explain why ICE's response to their interrogatories and requests for documents do not satisfactorily respond to their questions regarding the 30(b)(6) topics; the topics are not limited in geographic or temporal scope; and this is not a class action, which might possibly justify the broad-reaching discovery that Plaintiffs seek.  The topics Plaintiffs' propose do not seek testimony about the treatment of Plaintiffs *as compared to similarly situated non-Muslims*, thus they are not designed to elicit testimony relevant to the only remaining claim in this case.  See In re Domestic Drywall Antitrust Litig., 300 F.R.D. 234, 251-52 (E.D. Pa. 2014); see, e.g., Ebert v. C.R. Bard, Inc., No. 1:13-MC-277, 2014 WL 1365889, at *2-3 (M.D. Pa. Apr. 7, 2014) (quashing subpoena on conclusion that it imposed an undue burden because, among other factors, it

28

sought irrelevant information).  For these reasons, Defendants' motion for a protective order should be granted.

### 2.  Plaintiffs' 30(b)(6) Deposition Notice to CBP

Plaintiffs seek testimony on 14 topics from CBP.  Defendants are moving for a protective order on the grounds that the notice to CBP is cumulative and unduly burdensome because Plaintiffs deposed Director of Field Operations (DFO) Christopher Perry (a senior CBP official in charge of the United States ports of entry in the state of Michigan, who also verified CBP's responses to Plaintiffs' First Set of Interrogatories) and questioned him extensively about policies and practices pertaining to religious questioning (see, e.g., Perry Depo. at 18-20, 27-29, 32, 39, 56-60, 63, 66-67, 70, 74, attached as Exh. C), and because Defendants offered to stipulate to have the relevant parts of DFO Perry's deposition designated as CBP's 30(b)(6) testimony.  TR at 8-9, 11;[9] see Richardson v. Rock City Mech. Co., LLC, No. 3:09-92, 2010 WL 711830 (M.D. Tenn. Feb. 24, 2010) (holding that discovery can be precluded if it is unreasonably cumulative or duplicative, especially if prior deposition testimony covered the same inquiries or the party agrees to stipulate to prior testimony as 30(b)(6) testimony).  In addition to DFO

---

[9] In this motion, citations to TR are to the transcript of the Telephone Conference held by the Court on September 23, 2014 (ECF No. 82), attached as Exhibit D, at the page indicated.

Perry's testimony, Plaintiffs asked each of the 7 other CBP officers they deposed about applicable CBP policies, procedures and practices, so this deposition would be duplicative. See, e.g., Winkel Depo. at 19 (attached as Exh. E); Schultz Depo. at 11 (attached as Exh. F); Morin Depo. at 17-18 (asking if the agent is aware of any policy that prevents him from asking questions about religious beliefs/practices) (attached as Exh. G). For these reasons, CBP is entitled to a protective order as to all topics in Plaintiffs' Notice to CBP. Nonetheless, Defendants will address why CBP is entitled to a protective order as to each of the topics separately:

As with the notice to ICE, the final catch-all **Topic 14**: "All CBP Policies relevant to Plaintiffs' claims in this lawsuit," fails to comply with the requirement of Rule 30(b)(6) itself that a notice "must describe *with reasonable particularity* the matters for examination." **Topics 11, 12, and 13**[10] all concern an FBI task force, so they are not properly directed to CBP.

---

[10] "(11) Taskforce policies, practices and procedures pertaining to questioning Muslim Americans regarding their religious beliefs and practices at all ports of entry and inside the United States. (The Taskforce is the entity that includes Customs and Border Protection, the FBI and other government agencies testified to in the Deposition of Joseph Janos.); (12) Training and educational materials provided to CBP officers and members of the Taskforce regarding Islam and Muslims; (13) Training and educational materials provided to CBP officers and members of the Taskforce regarding religious questioning."

**Topic 3** seeks testimony about "[t]he April 26, 2013 DHS Memorandum to Component heads pertaining to racial and ethnic profiling," which is not likely to lead to the discovery of admissible evidence because this case does not concern racial or ethnic profiling—Plaintiffs allege only *religious* profiling and questioning—and because it post-dates the facts underlying Plaintiffs' claims and the complaint.  The only remaining issue is an equal protection claim based on religious questioning.

**Topic 6** seeks testimony on (as characterized by Plaintiffs) "[t]he reasons why CBP offered, made available, and/or paid for training that directed CBP agents to distinguish between 'traditional' Muslims and 'devout' Muslims based on how Muslim travelers cover their hair (see Deposition of Officer Miller)."  CBP seeks a protective order from this topic for several reasons.  First, *why* CBP made a decision on particular training is protected by the deliberative process. (This Court recognized this limitation in eliminating a document request.  <u>See</u> TR at 31-32.) Second, Plaintiffs have already deposed Officer Miller and asked her in detail about this training.  <u>See</u> Miller Depo. at 10-20 (attached as Exh. H).  Third,

31

Plaintiffs have already received the relevant documents in response to the supplemental written discovery they were permitted to serve.[11]

Plaintiffs' 30(b)(6) notice to CBP also includes two topics that are beyond the scope of this litigation: **Topic 7** seeks testimony about "[t]he methods [*sic*] CBP collects information regarding the number of times a person prays and/or whether Muslims perform their dawn prayer at the mosque;" and **Topic 8** seeks testimony about "[w]hat CBP does with information obtained about the religious beliefs and practices of Muslims that it collects."  Both topics contain assumptions about CBP's retention and use of the information, even though there is no basis for such assumptions.  Topic 7 seems to ask about CBP's "methods," which could implicate law enforcement privilege.  Again, this case is limited to an equal protection claim regarding religious questioning, so what CBP may or may not do with the information it collects is irrelevant and not likely to lead to the discovery of admissible evidence.

The remaining six topics are overbroad and unduly burdensome, overlap each other, and duplicate previous discovery:

---

[11] <u>See</u> Interrogatory No. 9: "For each training identified by any deponent, identify the title of the training, when it occurred, who conducted the training, how many CBP employees attended it, and the purpose of the training."  In this cross-motion, citations to interrogatories are to Plaintiffs' First Set of Interrogatories, unless otherwise stated.

**Topic 1.** CBP policies, practices and procedures pertaining to religious profiling of travelers at ports of entry;

**Topic 2.** CBP policies, practices and procedures pertaining to religious questioning of travelers at ports of entry;

**Topic 4.** All CBP programs which incorporate, rely upon, or include religious profiling in any manner;

**Topic 5.** All CBP programs, practices, and/or policies that authorize CBP agents to make law enforcement decisions that rely upon, in whole or in part, the religious identities of any persons;

**Topic 9.** The application of relevant CBP policies pertaining to questioning Muslim Americans regarding their religious beliefs and practices at all ports of entry;

**Topic 10.** CBP practices and procedures pertaining to questioning Muslim Americans regarding their religious beliefs and practices at all ports of entry and inside the United States.

This Court has made clear that this case is not about activity generally "inside the United States," but is limited to activity related to border crossings.  TR at 24. Accordingly, CBP is entitled to a protective order as to the breadth of these topics.[12]  This case should also be limited geographically to the Detroit, Michigan area – Defendants have consistently responded to Plaintiffs' discovery only as to the Port of Detroit (which includes the Ambassador Bridge and the Detroit-Canada

---

[12] The Stipulated Order defined the scope as "documents and information relating to questioning of international travelers at ports of entry about their religious practices and beliefs."  ECF No. 83 at 2.

Tunnel), the Port of Detroit Metropolitan Wayne County Airport, and the Port of

Port Huron, explaining that this includes all local and nationwide policies,

protocols, practices, and procedures that apply in these ports.  See Parrottino v.

Bankers Life & Cas. Co., No. 12-13084, 2014 WL 1516195 (E.D. Mich. Apr. 17,

2014) (limiting 30(b)(6) deposition topics to Michigan-only activity).  Plaintiffs

have not objected to this limitation.

Topics 1 and 4 are overbroad and unduly burdensome because they seek

testimony about any religious profiling, although this lawsuit is about religious

questioning.  Similarly, Topic 5, which seeks testimony about all *law enforcement*

*decisions*, is overbroad and unduly burdensome.  See Bearden v. Honeywell Int'l,

Inc., No. 3:09-1035, 2011 WL 2600575 (M.D. Tenn. June 29, 2011) (finding that

30(b)(6) deposition topics about "all" communications, policies and practices to be

"unduly broad and unlimited" in light of the more narrow topics listed.).  When

limited in time and to ports of entry in the Detroit area, Topics 2, 9 and 10 may

appear to be pertinent to the litigation, but they are unduly burdensome because

CBP has already responded to discovery on these same topics.  For example,

Plaintiffs' First Request for the Production of documents served on CBP sought,

*inter alia*:

7. A complete copy of any and all written policies, protocols, practices, and procedures in connection with, in addition to all records of incidents of, religious profiling and/or religious questioning by CBP at ports of entry. . . .

9. A complete copy of any and all documents . . . in connection with secondary screening of travelers, that contain the words "Islam," "Muslim," "mosque(s)," "masjid(s)," "Qur'an," "Koran," "Fajr," "morning prayer," "Imam," or any other Islamic term, from January 1, 2008 until the present.

10. A complete copy of any and all documents . . . pertaining to employee handbooks, educational materials, and training materials of CBP personnel in connection with (1) Islam or Muslims; (2) religious profiling at ports of entry; (3) religious questioning at ports of entry; (4) the selection and/or referral of Muslim travelers for additional questioning by CBP; and (5) the questioning of Muslim travelers . . . about their religious beliefs and practices . . . by CBP before allowing them to enter the United States . . . .

In addition, Plaintiffs already deposed 8 CBP officials about Plaintiffs' border crossings and all related policies and practices. Thus, Plaintiffs already have the information they seek.

### 3. Plaintiffs' 30(b)(6) Deposition Notice to FBI

The role of the FBI in the events underlying this litigation was very limited (as was the role of ICE, discussed above). There is only one interview of Plaintiff Cherri at the border by one individual affiliated with an FBI Task Force, namely CBP Officer Joseph Janos—who, at the time of that interview, was assigned to an FBI Task Force—and one interview of Plaintiff Cherri at his home by FBI Special Agents Thompson and Sokolowski, subsequent to that border crossing. Plaintiffs

deposed Officer Janos, and served interrogatories and document requests concerning Officer Janos and Special Agents Thompson and Sokolowski.  The 30(b)(6) deposition would as a result be cumulative and unduly burdensome. Defendants are seeking a protective order from all topics in the deposition notice addressed to the FBI for numerous reasons:

Starting again with the final, catch-all category, **Topic 13** ("Other FBI Policies relevant to Plaintiffs' claims in this lawsuit") fails to "describe with reasonable particularity the matters for examination" as required by Rule 30(b)(6).

A number of topics single out one document, the FBI's Domestic Investigation and Operations Guide (DIOG), which governs the FBI and the Task Force: **Topic 1** ("The [DIOG] produced by Defendants"); **Topic 7** ("The application of the [DIOG] at all ports of entry and inside the United States); and **Topic 8 (**"The application of the [DIOG] in questioning Muslim Americans regarding their religious beliefs and practices at all ports of entry and inside the United States.").  In addition **Topic 6** ("All FBI programs, practices, and/or policies that authorize FBI agents to make law enforcement decisions that rely upon, in whole or in part, the religious identities of any persons"), when propounded as an interrogatory elicited the response of the DIOG.  A 30(b)(6) deposition on the DIOG would only be duplicative and cumulative of Plaintiffs'

previous discovery because (1) the FBI has offered to stipulate that the DIOG

applied at "all of the times for Plaintiffs' allegations, that the DIOG applies to the

FBI domestically and at the border, that the DIOG does not prohibit FBI agents

from asking religious questions, and that the FBI DIOG applies to all faith

backgrounds," TR at 9; (2) the FBI has identified the DIOG in response to

Plaintiffs' numerous inquiries about the policies that apply to religious

questioning;[13] and (3) Officer Janos testified that he is not aware of "any task force

policy that prevents [him] from asking travelers regarding their religious faith."

Janos Depo. at 55.

Similarly, **Topics 9 and 10** seek testimony about FBI and Task Force

policies, practices and procedures in questioning Muslim Americans regarding

their religious beliefs and practices.  The FBI is seeking a protective order from

these topics because it has already addressed them in response to interrogatories

(*e.g.* Interrogatory No. 8:  "Identify all CBP, FBI and Taskforce written policies,

---

[13] For example, Interrogatory No. 5 asked Defendants to "Identify all restrictions
on the ability of CBP, FBI, and/or Taskforce agents to ask questions about the
religious beliefs of Muslim travelers;" RFP No. 1 sought "All documents that
regard CBP, FBI and/or the Taskforce's authority to utilize religion as a basis, in
whole or in part, for any law enforcement decision;" and RFP No. 8 sought:  "A
complete copy of any and all CBP, FBI and Taskforce written policies, protocols,
practices, procedures, guidelines and manuals pertaining to religion and/or the
religious questioning of travelers referred to secondary screening at ports of entry."

protocols, practices, procedures, guidelines and manuals pertaining to religion and/or religious questioning domestically. . . .") and document requests (*e.g.*, RFP No. 10: "A complete copy of any and all CBP, FBI and Taskforce written policies, protocols, practices, procedures, guidelines and manuals pertaining to religion and/or religious questioning domestically. . . . ").  As the FBI has told the Plaintiffs in their proffered stipulation, the short answer is that no such policy or procedure exists.  Plaintiffs' motion to compel does not set forth any basis for this over-broad, cumulative, duplicative, and burdensome discovery.  See Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii).

**Topics 2 and 3**, which seek testimony about "[w]hether the FBI believes it has the authority to engage in religious profiling," and "[w]hether the FBI believes it has the authority to engage in religious questioning," are not appropriate topics for a 30(b)(6) deposition.  The FBI's "belief" is not relevant.  These topics are really asking about a legal question, a legal question which is not relevant to the equal protection challenge that remains in the lawsuit.  Cf. ACLU v. FBI, 734 F.3d 460 (6th Cir. 2013).

**Topics 11 and 12** ask for testimony regarding training materials provided to FBI agents and members of the Task Force about religious questioning, Islam and Muslims.  These requests are overbroad and unduly burdensome in light of the fact

that Defendants already addressed these topics in written discovery, both in response to interrogatories (*e.g.*, Interrogatory No. 1: "Identify all CBP, FBI, and/or Taskforce trainings—either conducted, authorized, or facilitated by the agencies—that regarded Islam or Muslims, during the past five years to the present.") and document requests (*e.g.*, RFP 2: "All documents that regard any CBP, FBI and/or Taskforce training that regarded Islam or Muslims in the last five years."). In addition Plaintiffs already deposed Officer Janos and asked him about his training. See, e.g., Janos Depo. at 8, 11, 20-22. The FBI should be granted a protective order from cumulative discovery about trainings. See Rule 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit.").

Defendants seek a protective order from **Topics 4 and 5** because they are not "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). Topic 4 seeks testimony about "[a]ll FBI programs which incorporate, rely upon, or include religious profiling in any manner." This litigation is not about religious profiling or any FBI programs, accordingly, Topic 4 is overbroad on its face and is not "discovery of any matter relevant to the subject matter involved in the litigation." Fed. R. Civ. P. 26(b)(1). Topic 5 asks for testimony

39

about "[t]he effect of the training materials that regarded Muslims and Islam that the FBI and/or Department of Justice identified as discriminatory, inflammatory, and/or otherwise improper." Again, this topic is not relevant to the equal protection claim before this Court, indeed, it reads like a fishing expedition for other litigation or areas of interest to the Council on American-Islamic Relations, which represents Plaintiffs. Cf. Mycogen Plant Sci., Inc. v. Monsanto Co., 164 F.R.D. 623, 627 n.9 (E.D. Pa. 1996) ("'[I]f the sought-after documents are not relevant . . . then any burden whatsoever imposed . . . would be by definition 'undue'.'" (quoting Compaq Computer Corp. v. Packard Bell Elecs., Inc., 163 F.R.D. 329, 335-36 (N.D. Cal. 1995)).

For the reasons set forth above, including the FBI's proffer of a stipulation, the FBI's responses to document requests, the FBI's responses to interrogatories, and the deposition of Officer Janos, the Court should enter an order protecting the FBI from having to appear at a Rule 30(b)(6) deposition to address the wide-ranging and irrelevant topics that Plaintiffs have propounded.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel Discovery should be denied, and Defendants' Cross-Motion for a Protective Order should be granted.

Dated:     April 28, 2015      Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

BARBARA L. MCQUADE
United States Attorney

JOHN TYLER
Assistant Branch Director
Federal Programs Branch

 _/s/ Joseph C. Folio III_____
SUSAN ULLMAN
Senior Counsel
JOSEPH C. FOLIO III (MD Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
TELEPHONE:   (202) 305-4968
FAX:          (202) 616-8460
E-MAIL:      Joseph.Folio@usdoj.gov

ATTORNEYS FOR THE DEFENDANTS

41

<u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Shereef H. Akeel
Syed H. Akbar
Akeel & Valentine, PLLC
888 W. Big Beaver Rd., Ste. 910
Troy, MI 48084
shereef@akeelvalentine.com

Lena F. Masri
Council on American-Islamic Relations
21700 Northwestern Hwy, Ste. 815
Southfield, MI 48075
lmasri@cair.com

Gadeir I. Abbas
The Law Office of Gadeir Abbas
1155 F Street NW, Suite 1050
Washington, DC 20004
gadeir.abbas@gmail.com

DATED: April 28, 2015

_/s/ Joseph C. Folio III_____
JOSEPH C. FOLIO III (MD Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
TELEPHONE:    (202) 305-4968
E-MAIL:        Joseph.Folio@usdoj.gov

42